No. 108,351

Marc L. Hays and Jennifer L. Hays, *Plaintiffs*, v. Neil J. Ruther; Consumer Law Associates, LLC; New Leaf Debt, LLC; and EFA Processing, L.P., *Defendants*.

(313 P.3d 782)

Opinion filed November 22, 2013.

*Martin J. Peck*, of Wellington, argued the cause and was on the brief for plaintiffs.

*Christopher M. Joseph*, of Joseph, Hollander & Craft LLC, of Topeka, argued the cause, and *Carrie E. Parker*, of the same firm, was with him on the briefs for defendant Neil Ruther; *W. Thomas Gilman*, of Redmond & Nazar, L.L.P., of Wichita, was with them on the briefs for defendant Consumer Law Associates, LLC.

*Derenda J. Mitchell*, assistant attorney general, argued the cause and was on the brief for intervenor State of Kansas.

*Gaye B. Tibbets*, of Hite, Fanning & Honeyman, L.L.P., of Wichita, was on the brief for *amicus curiae* Trustee Parks; and *Eric W. Lomas*, of Klenda Austerman LLC, of Wichita, was with her on the brief for *amicus curiae* Trustee Morris.

The opinion of the court was delivered by

ROSEN, J.: Before this court are two questions certified by the United States District Court for the District of Kansas. Jurisdiction over the questions is provided by K.S.A. 60-3201 *et seq*. The federal litigation is in the pretrial stages. It involves claims by two Kansas residents who entered into an agreement with an out-of-state limited liability company to assist them in managing their consumer debt and in dealing with their creditors. The Kansas plaintiffs brought an action against the limited liability company, its managing member, and other entities for asserted violations of the Kansas Credit Services Organization Act (KCSOA), K.S.A. 50-1116 *et seq.*, and the Kansas Consumer Protection Act (KCPA), K.S.A. 50-623 *et seq*. The certified questions ask this court to clarify the application of those statutes to attorneys and law firms.

Certified questions of law turn on legal issues. *Burnett v. Southwestern Bell Telephone*, 283 Kan. 134, 136, 151 P.3d 837 (2007). This court will not decide questions of fact when analyzing certified questions. *OMI Holdings, Inc. v. Howell*, 260 Kan. 305, 346, 918 P.2d 1274 (1996). The propriety of the certifying court's factual findings and the factual findings urged by the parties are not properly before this court. *Ortega v. IBP, Inc.*, 255 Kan. 513, 515, 874 P.2d 1188 (1994).

Although the parties urge us to apply the consumer statutes to various posited factual scenarios, we will address the certified questions as questions of law and will leave the factual determinations and applications of the law to those facts in the capable hands of the federal district court.

1. *If an attorney who is licensed to practice law in Kansas and who is acting within the course and scope of the attorney's practice is exempt from the provisions of the Kansas Credit Services Organization Act, is the attorney's law firm also exempt?*

The interpretation and application of statutes is a matter of law over which this court exercises unlimited review. The intent of the legislature, if ascertainable, governs the interpretation of statutes. This court presumes that the legislature expressed its intent through the language of the statutory scheme, and, if a statute is

plain and unambiguous, this court will neither speculate regarding the legislative intent nor read into the statute something that is not readily found in it. When the meaning of a statute is ambiguous, this court may turn to legislative history, canons of construction, and other background considerations to construe the intent of the legislature. *In re Adoption of H.C.H.*, 297 Kan. 819, 304 P.3d 1271 (2013).

At the time the suit was filed in the case giving rise to the certified questions, K.S.A. 50-1116 read:

"(a) K.S.A. 50-1116 through 50-1135, and amendments thereto, shall be known and may be cited as the Kansas credit services organization act [KCSOA].

"(b) Any person licensed to practice law in this state acting within the course and scope of such person's practice as an attorney shall be exempt from the provisions of this act."

K.S.A. 50-1117(f) defined a person as "any individual, corporation, partnership, association, unincorporated organization or other form of entity, however organized, including a nonprofit entity."

The KCSOA requires credit service organizations to register with the State of Kansas in order to carry on their business with any resident of the state. K.S.A. 50-1118(a). Subsequent sections of the statute set out the requirements for registration, including surety bonds, and substantive duties assumed by registrants and acts that are prohibited for registrants, such as misrepresentations to consumers.

The certified question posed by the federal court asks this court to determine whether the attorney exception to the duties, limitations, and sanctions of the 2005 version of the statute applied to an attorney only or applied also to the attorney's law firm. We conclude that the legislature intended that the exception also apply to the law firm of an attorney who was exempt under the act.

K.S.A. 50-1116(b) expressly stated that any *person* licensed to practice law was exempt. The legislature elected to use the word "person," instead of "individual." In K.S.A. 50-1117(f), the legislature then defined "person" to include corporations, partnerships, and other business organizations. Business organizations cannot be licensed to practice law, and the plain language of the two statutory

provisions leads to an impossible result when the two statutory provisions are read together.

Statutory provisions that are clear when read separately may become ambiguous when read together, invoking employment of canons of construction, legislative history, or other background considerations to divine the legislature's intent. *Martin v. Naik*, 297 Kan. 241, 258, 300 P.3d 625 (2013). A conflict between two statutory provisions is an example of such ambiguity in a statutory scheme. *State v. Coman*, 294 Kan. 84, 93, 273 P.3d 701 (2012).

Our conclusion that the legislature intended the exception to apply to law firms as well as to individual attorneys rests on two foundations.

First, exempting attorneys without exempting law firms may produce absurd results.

For example, attorneys often employ consultants and paralegals who may engage in timekeeping for billing purposes. See, *e.g.*, *Citizens Utility Ratepayer Bd. v. Kansas Corporation Comm'n*, 47 Kan. App. 2d 1112, 1120, 284 P.3d 348 (2012). To exempt attorneys from statutory requirements and penalties while subjecting their support staff to such requirements and penalties would at the very least vastly complicate the practice of law and in many instances could render it impractical. Furthermore, attorneys frequently set up their practices as business organizations. Attorneys who elect to form limited liability companies would find themselves in the peculiar situation of being exempt as individuals from the reach of KCSOA but subject to all the requirements of KCSOA in their business organizational capacity.

Courts presume that the legislature does not enact useless or meaningless legislation, and the judicial interpretation of a statute should avoid absurd or unreasonable results. *Kansas One-Call System v. State*, 294 Kan. 220, 233, 274 P.3d 625 (2012). We decline to interpret KCSOA in such a way as to render it impractical and unreasonable. Instead, we determine that the legislature intended the attorney exception in KCSOA to apply to the law firm of an attorney who is exempt from the provisions under the Act.

We find in the history of the statutory scheme further support for this conclusion. In 2012, the legislature amended K.S.A. 50-

1116(b). The legislature replaced the word "person" with the word "individual," and it added an explicit exemption for the individual's law firm. The legislature also added a definition of "law firm" to K.S.A. 2012 Supp. 50-1117.

When a statute is ambiguous and is later amended, the legislative purpose in amending it may be to clarify ambiguities within the statute. Amendments that construe or clarify a statute are to be accepted as a legislative declaration of the meaning of the original statute. *Brennan v. Kansas Insurance Guaranty Ass'n*, 293 Kan. 446, 458, 264 P.3d 102 (2011).

The House Financial Institutions Committee minutes indicate that the 2012 amendment was intended to clarify that the legislature originally intended the KCSOA exemption to include law firms as well as attorneys. House Financial Institutions Committee Minutes, Monday, April 30, 2012; Tuesday, May 1, 2012. Both the testimony to the legislative committee and the subsequent amendments demonstrate that the new statutory language did not expand the exemption but merely clarified it. The clarification corresponds with our earlier analysis of the language of the preamendment statute.

We are mindful that at least two other courts have reached a different conclusion on this question. *In re Kinderknecht*, 470 B.R. 149 (D. Kan. 2012); *Consumer Law Associates v. Stork*, 47 Kan. App. 2d 208, 276 P.3d 226 (2012). While noting that the opinions of these courts are not binding upon this court, we also point out that these courts did not have the benefit of the legislative history laid out in the testimony supporting the 2012 amendments and did not have the amended statute before them.

We answer the question certified by the federal court in the affirmative: An exempt attorney's law firm was also exempt under K.S.A. 50-1116(b) and K.S.A. 50-1117(f). We are not asked to define a law firm, and we take no position on whether the defendant Consumer Law Associates, LLC, is an exempt law firm under the KCSOA.

*2. Does application of the Kansas Consumer Protection Act or the Kansas Credit Services Organization Act to attorneys, law firms, and their administrative agents in the context of attorney-client relationships violate the separation of powers mandated by Article 3, Section 1 of the Kansas Constitution?*

The KCSOA contains an exemption for attorneys acting within the course of their legal practice, and that the Act consequently does not violate the separation of powers doctrine as it relates to attorneys licensed in Kansas and engaged in the practice of law. The Kansas Consumer Protection Act (KCPA), K.S.A. 50-623 *et seq.*, on the other hand, contains no exemption for attorneys or law firms. Remedies under the KCSOA operate in addition to remedies under the KCPA, and violations of the KCSOA are defined as deceptive acts or practices under the KCPA. K.S.A. 50-1132. In *Moore v. Bird Engineering Co.*, 273 Kan. 2, 12, 41 P.3d 755 (2002), this court held that providers of professional services—in that case engineers—are subject to the KCPA, while explicitly avoiding addressing whether the legal profession is subject to the KCPA. The certified question asks this court to determine whether enforcing the provisions of the KCPA against attorneys would violate the constitutional separation of powers.

In general, this court presumes that a statute is constitutional and resolves all doubts about the statute in favor of constitutionality. *State v. Mossman*, 294 Kan. 901, 906-07, 281 P.3d 153 (2012).

In *State ex rel. Stephan v. Kansas House of Representatives*, 236 Kan. 45, 59-60, 687 P.2d 622 (1984), this court summarized four general principles concerning the separation of powers doctrine:

(1) A statute is presumed to be constitutional, with all doubts resolved in favor of its validity, and must clearly violate the constitution before this court may strike it down.

(2) In addressing a challenge to a statute under the doctrine of separation of powers, this court must search for the usurpation by one department of the powers of another department on the specific facts and circumstances presented.

(3) Powers are usurped when one department significantly interferes with the operations of another department.

(4) In determining whether powers are usurped, the court should consider (a) the essential nature of the power being exercised; (b) the degree of control by one department over another; (c) the objective sought to be attained by the legislature; and (d) the practical result of the blending of powers as shown by actual experience over a period of time.

Article 3, Section 1 of the Kansas Constitution reads:

"The judicial power of this state shall be vested exclusively in one court of justice, which shall be divided into one supreme court, district courts, and such other courts as are provided by law; and all courts of record shall have a seal. The supreme court shall have general administrative authority over all courts in this state."

Legislation may violate the separation of powers doctrine when the legislation permits one branch of government to usurp or intrude into the powers of another branch of government. In such a situation, the statute is unconstitutional. *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 880, 179 P.3d 366 (2008). Although the doctrine of separation of powers is not expressly stated in either the United States or Kansas Constitutions, it is recognized as " 'an inherent and integral element of the republican form of government.' " *State ex rel. Morrison*, 285 Kan. at 882 (quoting *Van Sickle v. Shanahan*, 212 Kan. 426, 447, 511 P.2d 223 [1973]).

Regulating the practice of law is deemed to be a function of the judicial branch of government:

"[T]he practice of law is so intimately connected and bound up with the exercise of judicial power in the administration of justice that the right to regulate the practice naturally and logically belongs to the judicial department of the government. [Citation omitted]. Included in that power is the supreme court's inherent right to prescribe conditions for admission to the Bar, to define, supervise, regulate and control the practice of law, whether in or out of court, and this is so notwithstanding acts of the legislature in the exercise of its police power to protect the public interest and welfare. [Citations omitted.]" *Martin v. Davis*, 187 Kan. 473, 478-79, 357 P.2d 782 (1960).

A statutory regulation governing the practice of law is effective only when it accords with the inherent power of the judiciary, because licensed attorneys are officers of the court. *Martin*, 187 Kan. at 479. This court has nevertheless recognized the legitimate au-

thority of the legislature to enact statutes that have direct or indirect effects on the practice of law; when those statutes reinforce the objective of the judiciary. For example, the legislative or executive branches may generate rules governing the appointment of attorneys for indigent defendants and for computing the compensation for those attorneys, *State ex rel. Stephan v. Smith*, 242 Kan. 336, 747 P.2d 816 (1987), and the legislature may enact rules that preclude the appearance of attorneys to represent clients in certain causes of action, such as in small claims courts. *Kansas Bar Ass'n v. Judges of the Third Judicial Dist.*, 270 Kan. 489, 14 P.3d 1154 (2000); *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 14 P.3d 1149 (2000).

The purpose of the consumer protection laws in Kansas is protection of the public. See K.S.A. 50-623; *Moore*, 273 Kan. at 10. This intent is consistent with the Kansas Rules of Professional Conduct. See, *e.g., In re Daugherty*, 285 Kan. 1143, 1154, 180 P.3d 536 (2008) (purpose of disciplinary system is to maintain integrity of legal system, safeguard administration of justice, and protect public from incompetent or unscrupulous attorneys). The KCPA harmonizes with the goals of this court when it regulates the practice of law, and the statute provides a private cause of action that supplements the regulatory power of this court.

Legislation that has an incidental impact on the practice of law and that does not conflict with the essential mission of regulating the practice of law in this state does not violate the separation of powers doctrine.

The KCPA provides for a broad range of remedies. These include injunctive relief restraining marketing practices, K.S.A. 50-631(e)(1); recovery of damages, K.S.A. 50-632(a)(3); private remedies, K.S.A. 50-634(b); civil penalties, K.S.A. 50-636; and suspending licenses to carry out a business, K.S.A. 50-631(e)(2). We note that the attorney general does not have independent authority to suspend or cancel the license of a lawyer, because lawyers are subject to a separate supervisory authority, the Kansas Supreme Court. See K.S.A. 50-633.

Many of the remedies under the KCPA provide for economic sanctions. In this respect, they are little different from common-

law malpractice claims or statutory allocation of attorney fees. Certain sanctions, however, such as restraints on the scope of an attorney's practice, could cross into the area of regulating the practice of law that is reserved for this court.

When the answer to a certified question depends on factual circumstances, this court will not provide a definite response. See *American Family Mut. Ins. Co. v. Wilkins*, 285 Kan. 1054, 1067, 179 P.3d 1104 (2008). We hold that attorneys are not inherently exempt from the reach of the KCPA by virtue of the doctrine of separation of powers, but certain statutory remedies may be unconstitutional if they encroach on the traditional exclusive powers of the court, especially the powers relating to issuing and regulating the license to practice law.

We accordingly answer the first certified question in the affirmative. The answer to the second certified question depends on the manner in which the statute is applied to licensed attorneys.

BEIER, J., not participating.

SCHROEDER, J., assigned.