ATTORNEYS FOR APPELLANTS
Kevin P. Podlaski
Micah J. Nichols
Beers Mallers Backs & Salin, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Aaron T. Craft
David L. Steiner
Deputy Attorneys General
Indianapolis, Indiana

# In the
# Indiana Supreme Court



FILED

Mar 21 2017, 1:31 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

### No. 49S05-1703-PL-161

CONSUMER ATTORNEY SERVICES, P.A., THE
MCCANN LAW GROUP, LLP, AND BRENDA L.
MCCANN, INDIVIDUALLY AND AS OWNER
AND/OR OFFICER OF CONSUMER ATTORNEY
SERVICES, P.A. AND THE MCCANN LAW
GROUP, LLP,

*Appellants (Defendants below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49D11-1401-PL-1477
The Honorable John F. Hanley, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A05-1504-PL-274

**March 21, 2017**

**Massa, Justice.**

Consumer Attorney Services, P.A., The McCann Law Group, LLP, and Brenda McCann (collectively "Defendants") appeal the trial court's denial of their motion for summary judgment, claiming they are all expressly or impliedly exempt from liability under each of the four statutes cited by the State in this civil suit. Finding that none of the Defendants properly fit within these statutory exemptions, we affirm.

## Facts and Procedural History

CAS[1] is a Florida corporation that purports to specialize in foreclosure- and mortgage-related legal defense work, requiring non-refundable retainers and monthly fees up front to be automatically deducted from bank accounts.[2] McCann was an attorney licensed in Florida, who acted as CAS's manager.[3] CAS subcontracted with at least five Indiana attorneys to provide local services, who executed "Of Counsel," "Associate," and/or "Partnership" agreements with CAS. Under the "Partnership" agreement, the attorney acquired a 1% non-voting interest in CAS, and was to be involved with client intake and screening, to administer the referral of Indiana cases to other Indiana lawyers employed by CAS, and to provide clients with direct legal services as needed. Under the "Associate" agreements, CAS handled all aspects of client intake and communication, document preparation, and billing, with the attorney's role limited to speaking

---

[1] Consumer Attorney Services was a registered trade name for The McCann Law Group and both operated as a single entity, and thus will be referred to jointly as "CAS."

[2] As CAS was the party that moved for summary judgment, all facts and reasonable inferences are construed in favor of the State as the non-movant. Indiana Restorative Dentistry, P.C. v. Laven Ins. Agency, Inc., 27 N.E.3d 260, 264 (Ind. 2015).

[3] McCann has been effectively disbarred in Florida. In re Petition for Disciplinary Revocation of McCann, 153 So.3d 905 (Fla. 2014) (table). Additionally, McCann has never been licensed to practice in Indiana.

with clients only when directly asked by the client, and meeting with them only once prior to filing any legal documents such as a bankruptcy petition (in order to obtain appropriate signatures), and speaking with opposing counsel only when "necessitated." Appellant's App. at 86. Under the "Of Counsel" agreements, the lawyer was a completely independent contractor, but was to perform essentially the same functions as under the Associate agreement. All of these agreements were entered into *before* CAS registered as a foreign entity authorized to do business in Indiana.

Indiana homeowners quickly began to register complaints with the Office of the Indiana Attorney General regarding CAS's treatment of their foreclosure and loan-modification cases. The OAG's investigation revealed that at no point between initial contact and retention did the majority of the Indiana homeowners in question have any contact with an Indiana-licensed attorney, and moreover that the legal services they did receive after retention were "perfunctory." Appellant's App. at 252. Of the cases the OAG investigated, no home owners obtained a successful loan modification. And all of the conduct in question (including the majority of the complaints examined) also occurred prior to CAS's registration with the Indiana Secretary of State.

The State then brought this civil suit against Defendants, alleging their conduct violated four Indiana consumer protection statutes: (1) the Credit Services Organizations Act (CSOA), Indiana Code chapter 24-5-15 (2016); (2) the Mortgage Rescue Protection Fraud Act (MRPFA), Indiana Code article 24-5.5 (2016); (3) the Home Loan Practices Act (HLPA), Indiana Code article 24-9 (2016); and (4) the Deceptive Consumer Sales Act (DCSA), Indiana Code chapter 24-5-0.5 (2016). Defendants moved for summary judgment, claiming they were all statutorily exempted from liability. The trial court denied the motion, but certified its order for interlocutory appeal. Our Court of Appeals affirmed in part, reversed in part, and remanded, finding that CAS was exempt from liability under everything but a portion of the DCSA claim, while McCann was not exempt under any of the four statutes. Consumer Attorney Servs., P.A. v. State, 53 N.E.3d 599, 612 (Ind. Ct. App. 2016), reh'g denied. We hereby grant the State's petition to transfer and vacate the Court of Appeals' decision below. Ind. Appellate Rule 58(A).

## Standard of Review

On review of a grant or denial of a motion for summary judgment, we stand in the same position as the trial court:  the movant bears the initial burden of designating evidence affirmatively negating that there is any genuine issue of fact as to a determinative issue, at which point the burden shifts to the non-movant to demonstrate such a genuine issue of fact indeed exists.  Hughley v. State, 15 N.E.3d 1000, 1003–04 (Ind. 2014); Ind. Trial Rule 56(C).  And although our review is *de novo*, "a trial court's judgment comes to this court clothed with a presumption of validity, and the appellant bears the burden of proving that the trial court erred."  Schwartz v. Heeter, 994 N.E.2d 1102, 1105 (Ind. 2013) (internal quotations omitted).

## Neither the CSOA, the MRPFA, the HLPA, Nor the DCSA Provides an Exemption for Law Firms.

The CSOA protects Hoosiers from exploitative tactics regarding debt or credit management, by mandating that "credit services organizations" provide their potential customers with certain written disclosures, obtain appropriate surety bonding, and refrain from engaging in "deceptive acts," including charging up-front for their services before performance has been completed.  Ind. Code §§ 24-5-15-2 through -8.  Defendants claim that both CAS and McCann were exempt from the CSOA, however, because it excludes liability for any "person admitted to the practice of law in Indiana if the person is acting within the course and scope of the person's practice as an attorney," Ind. Code § 24-5-15-2(b)(6), and further defines "person" as "an individual, a corporation, a partnership, a joint venture, or any other entity."  Ind. Code § 24-5-15-4.  They cite Kansas precedent, which examined very similar language, found it to be ambiguous, and accordingly construed its CSOA exemption to cover law firms. See Hays v. Ruther, 313 P.3d 782 (Kan. 2013).  The State, for its part, concedes that these two statutes are ambiguous when read together, and that the exemption should reach exempted attorneys' firms in general; nevertheless, the State argues that there remains a genuine issue of material fact as to

4

whether CAS was the "bona fide law firm of the Indiana attorneys," and as to whether CAS was registered to conduct business in Indiana during the pertinent facts of this case. State's Br. at 22.

We agree that the text itself is facially ambiguous, because as a practical matter a "corporation, a partnership, a joint venture, or any other entity" is unable to "practice as an attorney," which is what the plain text of the two statutes contemplates. Accordingly, we turn to our canons of statutory construction, in order to resolve the ambiguity in the manner most consistent with the discernible legislative intent. See ESPN, Inc. v. Univ. of Notre Dame Police Dep't, 62 N.E.3d 1192, 1196 (Ind. 2016).

The Hays Court provided two primary justifications for construing the Kansas CSOA exemption broadly, neither of which we find persuasive in interpreting our CSOA. First, Hays sought to avoid the "peculiar situation" where every attorney at a firm could be exempt as individuals, but would still have to comply with its provisions in order to protect the firm as a business. 313 P.3d at 786. It is true that one of our interpretive canons is to "avoid construing a statute so as to create an absurd result." Walczak v. Labor Works-Ft. Wayne LLC, 983 N.E.2d 1146, 1154 (Ind. 2013). But the ultimate *purpose* of that canon is to interpret the text "consistently with the statute's underlying policy and goals." Id. And as the State has pointed out, "[t]he CSOA is a consumer protection statute intended to protect financially vulnerable Hoosiers from entities that promise to alleviate financial problems in exchange for up-front fees, which further diminishes the resources of a financially vulnerable person." State's Br. at 38. Although we agree with the Hays Court that excluding attorneys as individuals but not their firms may cause "peculiar" problems for the *firms*, we fail to see how construing the CSOA exemption broadly to exclude law firms would promote the legislative purpose of protecting the *public* from exploitative credit services.

Second, the Kansas legislature had recently revised its statutory scheme in order to resolve this ambiguity, and expressly incorporated law firms into the exemption (with accompanying legislative history explaining the change), which the Hays Court held should be "accepted as a

5

legislative declaration of the meaning of the original statute." 313 P.3d at 787. We have no similar legislative history or revision from our General Assembly to rely upon, and thus this rationale is inapplicable. We therefore turn to our other interpretive canons for guidance.

This Court has not previously interpreted the CSOA, but as discussed above, it is designed to serve the humane purpose of protecting vulnerable Hoosiers from further financial depletion by predators, and its specific protections exceed those contained in our common law. It is thus appropriate that the CSOA be liberally construed, in favor of those invoking its protections.[4] See, e.g., Young v. Hood's Gardens, Inc., 24 N.E.3d 421, 425 (Ind. 2015) ("As a general rule, we liberally construe the [Indiana's Worker's Compensation Act] to effectuate its humane purposes and resolve any doubts in the application of terms in favor of the employee."); Baker v. Westinghouse Elec. Corp., 637 N.E.2d 1271, 1275 (Ind. 1994) ("By authorizing compensation for certain diseases not caused by an employer's negligence, the [Occupational Diseases Act] created new rights and remedies previously unrecognized by our common law. The object of this act is the protection of workers who come within its provisions, and it should be liberally construed to effectuate this humane purpose." (internal citations omitted)); City of Evansville v. Moore, 563 N.E.2d 113, 115 (Ind. 1990) ("The purpose of the Journey's Account Statute is to ensure that the diligent suitor retains the right to a hearing in court until he receives a judgment on the merits. The statute's broad and liberal purpose is not to be frittered away by narrow construction." (internal quotations omitted)). And "[l]iberal construction of a statute requires narrow construction of its exceptions." D.B. v. Review Bd. of Indiana Dep't of Workforce Dev., 2 N.E.3d 705, 710 (Ind. Ct. App. 2013) (internal quotations omitted), trans. denied. Accordingly, narrowly construing Indiana

---

[4] Indeed, this Court *has* previously recognized that the DCSA contains an express statutory mandate that it "'be liberally construed and applied to promote its purposes and policies' of protecting consumers from deceptive or unconscionable sales practices." Kesling v. Hubler Nissan, Inc., 997 N.E.2d 327, 332 (Ind. 2013) (quoting Ind. Code § 24-5-0.5-1). And a CSOA violation constitutes a "deceptive act" for purposes of the DCSA. See Ind. Code § 24-5-0.5-3(b)(28).

Code section 24-5-15-2(b)(6) would be most in keeping with the apparent, discernible legislative intent of the CSOA.

Moreover, the term "person" is used throughout the CSOA, and "we read the statute as a whole, avoiding excessive reliance on a strict, literal meaning or the selective reading of individual words." Adams v. State, 960 N.E.2d 793, 798 (Ind. 2012). For instance, "person" is part of the definition of a "credit services organization," Ind. Code § 24-5-15-2(a), applies to those who violate the CSOA, Ind. Code § 24-5-15-11, and also applies to those *damaged* by a credit services organization, Ind. Code § 24-5-15-9. Each of these usages is in a general manner, and would permit application to every definition of "person" contained in Indiana Code section 24-5-15-4. The exemption contained in Indiana Code section 24-5-15-2(b)(5) is similar to (b)(6), however, in that the "person" must be "licensed as a real estate broker under IC 25-34.1 if the person is acting within the course and scope of the person's license" in order to claim it, which similarly would exclude organizations of real estate brokers such as agencies. Indiana Code section 24-5-15-2(b)(1), on the other hand, exempts a "person" who is "authorized to make loans or extensions of credit under state or federal laws that is subject to regulation and supervision under state or federal laws," which as a practical matter is far more likely to be a corporate entity than an individual. Thus in reading the statute as a whole, it seems clear that the General Assembly's expansive definition of "person" in Indiana Code section 24-5-15-4 was not intended to apply to *every* usage of that word in the CSOA, but rather each usage should be read in context, and only the *practicable* definitions should apply. This supports that only individuals were intended to be exempted under Indiana Code section 24-5-15-2(b)(6).

We also find it pertinent to examine the similar exemption contained in the MRPFA. The MRPFA applies to foreclosure proceedings, preventing a "foreclosure consultant" from engaging in the acts prohibited under the CSOA, and also, among other things, from gaining any personal interest in real property that is the subject of the client's foreclosure, or from gaining power of attorney over the homeowner. Ind. Code § 24-5.5-5-2. The MRPFA also contains a relevant exemption, but unlike the CSOA, it is very limited in scope, to "[a]n attorney licensed to practice

7

law in Indiana who is representing a mortgagor." Ind. Code § 24-5.5-1-1(6). "Attorney" is not a defined term in the MRPFA, and "[u]ndefined words in a statute or ordinance are given their plain, ordinary, and usual meaning." 600 Land, Inc. v. Metro. Bd. of Zoning Appeals of Marion Cty., 889 N.E.2d 305, 309 (Ind. 2008). Thus the MRPFA unambiguously exempts attorneys as individuals, not the law firms with which they are affiliated, because only an individual can be "licensed to practice law in Indiana." See Ind. Admis. Disc. R. 17 Sec. 1 ("No person shall be licensed to practice law in this state who has not taken and passed a Bar examination as provided in these rules . . . ."); Ind. Admis. Disc. R. 27 Sec. 1(b) (stating a corporate entity may practice law in Indiana "only through persons licensed by the Supreme Court of Indiana to do so."). And given the overlap in coverage between the MRPFA and the CSOA, we believe it would be odd indeed to read an expansive exemption into the CSOA which is unavailable under the MRPFA. See Klotz v. Hoyt, 900 N.E.2d 1, 5 (Ind. 2009) ("Statutes relating to the same general subject matter are in *pari materia* on the same subject and should be construed together so as to produce a harmonious statutory scheme." (internal quotations and alterations omitted)).

This interpretation also compliments this Court's disciplinary authority. In its argument supporting a CSOA law firm exemption, CAS asserts that such a ruling would "uphold[] the authority of the Indiana Supreme Court to discipline attorneys [and] regulate the practice of law[.]" Appellant's Br. at 21. But the case for this construction of our Admission and Disciplinary Rules does not persuade. Rule 23 governs the discipline of attorneys, as individuals – it contains no provisions for the discipline of an entire firm as a whole. See Ind. Admis. Disc. R. 23 Sec. 3(a) (2017) (listing "types of discipline [which] may be imposed upon any *attorney* found to have committed professional misconduct") (emphasis added). Indeed, with respect to law firms specifically, we have only three significant provisions regulating their conduct: (1) the unauthorized practice of law, Ind. Admis. Disc. R. 24; (2) registration as a Professional Company, Limited Liability Company or Limited Partnership practicing law in the State of Indiana, Ind. Admis. Disc. R. 27 Sec. 1, 1(b); and (3) maintaining adequate professional liability insurance for the firm, Ind. Admis. Disc. R. 27 Sec. 1(g). We thus find it reasonable that our General Assembly

8

would choose to exempt attorneys specifically (who *are* subject to far more extensive disciplinary action by this Court[5]) while not exempting their firms.

Accordingly, we find the CSOA exemption contained in Indiana Code section 24-5-15-2(b)(6) should be read as grammatically structured: the "person" in question must be both "admitted to the practice of law in Indiana" and "acting within the course and scope of the person's practice as an attorney." Therefore, although a law firm may qualify as a "person" with respect to *other* provisions of the CSOA, it does not qualify for an exemption under Indiana Code section 24-5-15-2(b)(6).

Finally, CAS claims it is also exempt from liability under the HLPA and the DCSA. The HLPA prohibits "deceptive act[s] in connection with a mortgage transaction or a real estate transaction," Ind. Code § 24-9-3-7(c)(3), and further defines "deceptive act" to include MRPFA violations, Ind. Code § 24-9-2-7(a)(2). The DCSA is broader in scope, barring an "unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction," Ind. Code § 24-5-0.5-3(a); however, "deceptive act" is further defined to specifically include CSOA and MRPFA violations, Ind. Code §§ 24-5-0.5-3(b)(28), (35). Neither the HLPA nor the DCSA contains an express attorney exemption of any kind, but CAS still sought exemption, on the grounds that the underlying alleged violation of the HLPA and the DCSA falls within the scope of the MRPFA and the CSOA. However, since we find no available law firm exemption under either of the principal statutes, there is no exemption to extend to these ancillary claims. And since

---

[5] Indeed, under the Indiana Constitution and our Rules, the Indiana Supreme Court has exclusive jurisdiction over cases "in which an attorney is charged with misconduct[.]" Ind. Admis. Disc. R. 23 Sec. 1(b); see also Ind. Const. art. VII, Sec. 4 ("The Supreme Court shall have no original jurisdiction except in admission to the practice of law; discipline or disbarment of those admitted; [and] the unauthorized practice of law . . . ."). While both parties alluded to separation-of-powers issues in their briefing, neither raised a constitutional argument before the trial court or on appeal.

9

McCann was never licensed as an attorney in the State of Indiana, she too cannot claim the exemptions contained in the CSOA or the MRPFA, nor can she extend them to the HLPA and the DCSA.

## Conclusion

For the foregoing reasons, we affirm the trial court's denial of Defendants' motion for summary judgment.

Rush, C.J., and Rucker, David, and Slaughter, JJ., concur.