

FILED

Aug 04 2017, 10:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy P. Broden
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Arrion Walton,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 4, 2017

Court of Appeals Case No.
79A04-1604-CR-768

Appeal from the Tippecanoe
Superior Court

The Honorable Randy J. Williams,
Judge

Trial Court Cause No.
79D01-1505-F2-02

**Vaidik, Chief Judge.**

# Case Summary

[1] Indiana Code section 35-47-4-5 provides that "[a] serious violent felon who possesses a firearm commits unlawful possession of a firearm by a serious violent felon" ("SVF"). In *Taylor v. State*, 929 N.E.2d 912 (Ind. Ct. App. 2010), *trans. denied*, we held that our General Assembly's use of the singular phrase "possesses a firearm" means that a serious violent felon who possesses more than one firearm has committed more than one offense. Consistent with that holding, Arrion Walton was convicted of multiple counts of SVF (along with various drug crimes) after being found in possession of multiple firearms. Today we reaffirm *Taylor* and uphold Walton's SVF convictions. However, we find that Walton's sixty-four-year sentence is inappropriate, and we remand this matter to the trial court for imposition of a sentence of forty-two years.

# Facts and Procedural History

[2] On five days in early 2015—January 30, February 2, April 8, April 23, and May 8—the Tippecanoe County Drug Task Force used a confidential informant to purchase cocaine from Walton. Then, on May 11, the police conducted searches at two apartments Walton was renting on two different floors of the same building. In the downstairs apartment, in which Walton was residing, officers found cocaine and a Bersa handgun. In the upstairs apartment, officers found additional cocaine, a Ruger handgun, and a Phoenix Arms handgun.

[3] With regard to the five controlled cocaine buys, the State charged Walton with five counts of dealing in cocaine: one Level 2 felony for the April 23 transaction, three Level 3 felonies, and one Level 4 felony. The State also charged him with the lesser-included offense of possession of cocaine as to each of the five buys. Furthermore, in relation to the search on May 11, the State charged Walton with six additional counts: Level 2 felony dealing in cocaine—possession with intent to deliver (based on the cocaine found in the downstairs apartment), Level 3 felony possession of cocaine (based on the cocaine found in the upstairs apartment), Level 2 felony conspiracy to commit dealing in cocaine, Level 6 felony maintaining a common nuisance, and two counts of Level 4 felony unlawful possession of a firearm by a serious violent felon ("SVF") (one based on the Bersa found in the downstairs apartment and one based on the Ruger and the Phoenix Arms found in the upstairs apartment). In addition, the State accused Walton of being a habitual offender based on his prior felony convictions.

[4] Walton was found guilty of all the charges listed above and was found to be a habitual offender. In sentencing Walton, the trial court distinguished the convictions relating to the controlled buys from the convictions relating to the search on May 11. Regarding the charges arising from the five controlled buys, the trial court merged the possession counts into the dealing counts and entered convictions and sentences on the dealing counts only. On the most serious dealing count, the Level 2 felony (Count IX), the trial court imposed a sentence of twenty-four years, enhanced by ten years based on the habitual-offender

finding, for a total of thirty-four years. The court imposed shorter sentences for the other four dealing convictions and ordered them to run concurrently with the thirty-four-year sentence for the Level 2 felony.[1]

[5]     As for the convictions arising from the search, the trial court imposed sentences of twenty-four years for dealing in cocaine—possession with intent to deliver, thirteen years for possession of cocaine, twenty-four years for conspiracy to commit dealing in cocaine, two years for maintaining a common nuisance, and eight years for each SVF count. However, the court also found that these six offenses constituted an "episode of criminal conduct" subject to a maximum total sentence of thirty years under Indiana Code section 35-50-1-2(c), and it sentenced Walton accordingly. The trial court then ordered that thirty-year sentence to run consecutive to the thirty-four-year sentence for the controlled buys, for a total sentence of sixty-four years.

[6]     Walton now appeals.

---

[1] During the sentencing hearing, the trial court made two errors with respect to the controlled-buy counts. First, it said that it was merging only four of the possession counts with their corresponding dealing counts, instead of all five. Second, it said that it was imposing sentences for each of the possession counts, even though they were to be merged into the dealing counts. However, neither error is present in the trial court's written Sentencing Order or the Abstract of Judgment, both of which indicate convictions and sentences for the dealing counts only. As such, there is nothing to be gained from remanding this matter to the trial court for further proceedings on this issue. The dissent suggests that merging the possession counts was an inadequate solution and that we should instruct the trial court to "vacate" them, but our Supreme Court has made clear that merger is sufficient. *Green v. State*, 856 N.E.2d 703 (Ind. 2006) ("Where the court merges the lesser-included offense without imposing judgment, there is no need to remand on appeal to 'vacate.'"); *see also Carter v. State*, 750 N.E.2d 778, 781 (Ind. 2001) ("[A] jury verdict on which the court did not enter judgment for one reason or another (merger, double jeopardy, etc.) is unproblematic[.]").

# Discussion and Decision

[7] Walton contends that his two SVF convictions constitute double jeopardy under Article 1, Section 14 of the Indiana Constitution and that his sentence is inappropriate.

# I. Double Jeopardy

[8] Walton's first argument is that his two SVF convictions fail the actual-evidence test under the double-jeopardy clause of the Indiana Constitution. "Under the actual-evidence test, we examine the actual evidence presented at trial in order to determine whether each challenged offense was established by separate and distinct facts." *Frazier v. State*, 988 N.E.2d 1257, 1262 (Ind. Ct. App. 2013). "To find a double-jeopardy violation under this test, we must conclude that there is 'a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.'" *Id*. (quoting *Richardson v. State*, 717 N.E.2d 32, 53 (Ind. 1999)). Here, the first SVF count was specifically based on the handgun found in the downstairs apartment, and the second count was specifically based on the handguns found in the upstairs apartment, and Walton gives us no reason to believe that he was actually convicted of the two counts based on the same evidence, i.e., the same gun. Therefore, Walton's double-jeopardy claim fails.

[9] The dissent addresses an issue that Walton has not raised: whether multiple SVF convictions based on the simultaneous possession of multiple firearms are

**ever** permissible under the SVF statute, Indiana Code section 35-47-4-5. The statute provides, in pertinent part, "A serious violent felon who knowingly or intentionally possesses a firearm commits unlawful possession of a firearm by a serious violent felon, a Level 4 felony." Ind. Code § 35-47-4-5(c). In *Taylor v. State*, we held that the General Assembly's use of the singular "possesses a firearm" reflects its intent to allow a separate conviction for each firearm a serious violent felon possesses. 929 N.E.2d 912, 921 (Ind. Ct. App. 2010), *trans. denied*; *see also Daugherty v. State*, 52 N.E.3d 885, 892 (Ind. Ct. App. 2016) (citing *Taylor* for proposition that Section 35-47-4-5(c) "provides that each unlawful possession of a weapon is considered to be a separate and distinct act, and therefore each unlawful possession is a separate and distinct offense."), *trans. denied*. The dissent concludes that *Taylor* was wrongly decided. We disagree.

[10]   If our legislature had intended to allow only a single possession conviction regardless of the number of firearms possessed, it could have used the phrase "possesses one or more firearms," *see State v. Stratton*, 567 A.2d 986, 989 (N.H. 1989), or "possesses any firearm," *see, e.g., United States v. Valentine*, 706 F.2d 282, 292-94 (10th Cir. 1983), instead of "possesses a firearm." It has thus far chosen not to do so. We also note that our interpretation of section 35-47-4-5(c) in *Taylor* is consistent with the way courts around the country have interpreted similar statutes. *See, e.g., State v. Kidd*, 562 N.W.2d 764, 765-66 (Iowa 1997) (collecting cases); *Stratton*, 567 A.2d at 989; *State v. Gutierrez*, 381 P.3d 254, 260 (Ariz. Ct. App. 2016) (collecting cases, including *Taylor*), *rev. denied*; *State v. Lindsey*, 583 So. 2d 1200, 1203-04 (La. Ct. App. 1991), *writ denied*. For these

reasons and the other reasons stated in *Taylor*, Walton's SVF convictions are permissible under the language of the SVF statute.

[11] While we reject Walton's challenge to his SVF convictions, we find, sua sponte, that one of his other convictions must be vacated to avoid a double-jeopardy violation. In relation to the search on May 11, Walton was convicted of one count of dealing in cocaine—possession with intent to deliver, based on the cocaine found in the downstairs apartment (Count XIII), and a separate count of possession of cocaine, based on the cocaine found in the upstairs apartment (Count XIV). However, this Court has held that a defendant cannot be convicted of two counts of drug possession (including possession with intent to deliver) based on two quantities of drugs simultaneously possessed in two closely related locations. *Donnegan v. State*, 809 N.E.2d 966, 974-75 (Ind. Ct. App. 2004) (possession on person, in residence, and in trash outside residence), *trans. denied*; *see also Campbell v. State*, 734 N.E.2d 248, 250-51 (Ind. Ct. App. 2000) (possession on person and in residence); *Young v. State*, 564 N.E.2d 968, 972 (Ind. Ct. App. 1991) (possession on person and in vehicle), *aff'd on reh'g*, *trans. denied*. Therefore, we must remand this matter to the trial court with instructions to vacate the judgment of conviction and the sentence on Count XIV.

## II. Sentencing

[12] Walton also asks us to reduce his sentence pursuant to Indiana Appellate Rule 7(B), which provides that an appellate court "may revise a sentence authorized

by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Because we generally defer to the judgment of trial courts in sentencing matters, defendants have the burden of persuading us that their sentences are inappropriate. *Schaaf v. State*, 54 N.E.3d 1041, 1044-45 (Ind. Ct. App. 2016). "Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014).

[13] Walton asserts that running the sentences for the drug-related convictions arising from the search on May 11 (dealing in cocaine, conspiracy to commit dealing in cocaine, and maintaining a common nuisance) consecutive to the sentence for the earlier controlled buys is inappropriate under *Beno v. State*, 581 N.E.2d 922 (Ind. 1991), and its progeny. We agree. In *Beno*, the defendant was convicted of two counts of dealing in cocaine and one count of maintaining a common nuisance after two controlled buys at his house, and the trial court ordered him to serve consecutive sentences on the three counts. On appeal, our Supreme Court held that "because the crimes committed were nearly identical State-sponsored buys, consecutive sentences were inappropriate." *Id*. at 924. More recently, in *Eckelbarger v. State*, the Court extended the *Beno* principle to hold that consecutive sentences were inappropriate for drug convictions arising from two controlled buys and a subsequent search of the defendant's home. 51 N.E.3d 169 (Ind. 2016). The Court reasoned that the sentences arising from the

search should be served concurrently with the sentences arising from the controlled buys because the convictions arising from the search were "supported by evidence seized pursuant to a search warrant procured based on the dealing methamphetamine by delivery counts[.]" *Id.* at 170. In a case similar to *Eckelbarger*—drug convictions arising from two controlled buys and the resultant home search—this Court held that the principle that "the State may not 'pile on' sentences by postponing prosecution in order to gather more evidence . . . applies equally to convictions arising from evidence gathered as a direct result of the State-sponsored criminal activity." *Williams v. State*, 891 N.E.2d 621, 635 (Ind. Ct. App. 2008); *see also Bell v. State*, 881 N.E.2d 1080, 1087-88 (Ind. Ct. App. 2008), *trans. denied*.

[14] Here, as in *Eckelbarger* and *Williams*, a series of controlled buys led to a search of Walton's apartments. The controlled buys resulted in five dealing convictions, and the subsequent search resulted in additional drug-related convictions. Because these additional drug-related convictions are supported by evidence seized as a direct result of the controlled buys, we agree with Walton that running the sentences for any of them consecutive to the sentences for the controlled buys would be inappropriate.[2]

---

[2] The State does not address *Eckelbarger*. It argues that *Williams* is distinguishable from this case because the buys and search in *Williams* took place over three days while the buys and search in this case spanned more than three months. The State does not cite any authority in support of its argument that the *Beno* rationale applies only when the events occur "within a few days of each other." Appellee's Br. p. 19. To the contrary, this Court has held that consecutive sentences are inappropriate for convictions arising from five controlled buys conducted over the course of two months. *Hendrickson v. State*, 690 N.E.2d 765 (Ind. Ct. App. 1998).

Therefore, we remand this matter to the trial court for the imposition of a sentence of forty-two years: thirty-four years on Count IX (with the shorter sentences on the remaining drug-related convictions to run concurrently) and eight years on each of the SVF convictions, to run concurrently with one another but consecutive to Count IX (Walton acknowledges that his gun possession is distinguishable from his drug crimes and is not subject to the *Beno/Eckelbarger* principle). In making these changes, the trial court must also reduce the sentences for Count XIII (dealing in cocaine) and Count XV (conspiracy to commit dealing in cocaine) from twenty-four years to twenty-two years, so as to avoid any potential claim of error under the "episode of criminal conduct" statute, Indiana Code section 35-50-1-2.[3]

Affirmed in part and reversed and remanded in part.

---

The State also contends Walton's conviction for maintaining a common nuisance "does not fall within the rationale of the *Beno* rule." Appellee's Br. p. 18. As already noted, however, one of the sentences ordered concurrent by the Supreme Court in *Beno* was for maintaining a common nuisance.

[3] The version of Section 35-50-1-2(c) that was in effect when Walton committed his offenses provided that "the total of the consecutive terms of imprisonment to which the defendant is sentenced" for a non-violent episode of criminal conduct "shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted." Ind. Code Ann. § 35-50-1-2(c) (West 2012). Here, the trial court found that the May 11 offenses constituted an episode of criminal conduct, so the total of the consecutive terms of imprisonment could not exceed thirty years, the advisory sentence for a Level 1 felony (the most serious offense on May 11 having been a Level 2 felony). The trial court correctly identified this thirty-year cap and said that it was imposing a cumulative sentence of thirty years for the May 11 offenses, but it failed to impose individual sentences that actually added up to thirty years. Instead, it indicated that it was imposing sentences of twenty-four years for dealing in cocaine, twenty-four years for conspiracy to commit dealing in cocaine, two years for maintaining a common nuisance, and eight years for each SVF conviction. Because the eight years on the SVF convictions run consecutive to the concurrent sentences on the drug-related convictions, including the sentences for the May 11 dealing and conspiracy, the latter sentences must be reduced to twenty-two years to reach the thirty-year cap.

Robb, J., concurs.

Bailey, J, dissents with separate opinion.

ATTORNEY FOR APPELLANT

Timothy P. Broden
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Arrion Walton,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 4, 2017

Court of Appeals Case No.
79A04-1604-CR-768

Appeal from the Tippecanoe
Superior Court

The Honorable Randy J. Williams,
Judge

Trial Court Cause No.
79D01-1505-F2-02

**Bailey, Judge dissenting**

[17]     I would resolve this case differently from the majority in three respects. First, I would conclude that the SVF statute does not support two convictions under these facts. Second, because the trial court orally entered judgment of conviction on the lesser-included possession counts, and having already identified multiple issues with the sentencing order, I would instruct the trial court to vacate the lesser-included counts that it later merged. Third, although I agree that Walton's drug-related counts warrant concurrent sentences under *Beno* and its progeny, in light of the resultant conflict with the statutory sentencing limit as well as the impact on the aggregate length of Walton's sentence, I would defer to the trial court and remand for resentencing.

## SVF Convictions

[18]     Walton was convicted of multiple SVF counts based on his constructive possession of multiple firearms. If the SVF statute does not authorize more than one conviction under these facts, then Walton's convictions run afoul of principles of double jeopardy. It is essential, then, to look to the SVF statute,[4]

---

[4] The majority notes that Walton has not challenged the SVF statute, yet appellate courts "must address double jeopardy violations *sua sponte* where they exist because 'a double jeopardy violation, if shown, implicates fundamental rights.'" *Montgomery v. State*, 21 N.E.3d 846, 864 n.5 (Ind. Ct. App. 2014) (quoting *Smith v. State*, 881 N.E.2d 1040, 1047 (Ind. Ct. App. 2008)), *trans. denied*. Thus, just as it was appropriate for the majority to *sua sponte* identify a double jeopardy issue concerning two of Walton's cocaine-related convictions, it is appropriate to evaluate the SVF statute to fairly consider Walton's fundamental rights.

which states that a serious violent felon may not "knowingly or intentionally possess a firearm." I.C. § 35-47-4-5(c).

[19] The SVF statute uses the singular language "possesses a firearm," but it is not clear whether that permits a separate conviction for each and every firearm or a single conviction for all firearms possessed. On the one hand, this singular language could be viewed as reflecting an intent to allow a separate conviction for each and every firearm—the majority concludes as much, relying on *Taylor v. State*, 929 N.E.2d 912 (Ind. Ct. App. 2010), *trans. denied*. On the other hand, however, it is equally plausible that the legislature selected the singular language "possesses a firearm" to ensure a conviction for the possession of one or more firearms. The majority points out that the legislature could have used more precise language if it had intended to allow a single conviction regardless of the number of firearms possessed—and it is right. But, the legislature could also have been more precise and enacted a statute that expressly permits a conviction for each and every firearm. Yet, nothing on the face of the statute evinces a clear intent either way. Thus, the instant statute is ambiguous.[5] *See Day v. State*, 57 N.E.3d 809, 813 (Ind. 2016) ("[A] statute is ambiguous when it allows more than one reasonable interpretation.").

---

[5] To the extent that my statutory analysis parts ways with *Taylor*, I would conclude that *Taylor* should not be afforded legislative acquiescence, given the short time that has passed since the case was decided and that the Indiana Supreme Court has not yet addressed this issue. *See Layman v. State*, 42 N.E.3d 972, 978 (Ind. 2015) (noting "that a judicial interpretation of a statute, particularly by the Indiana Supreme Court, accompanied by substantial legislative inaction for a considerable time, may be understood to signify the General Assembly's acquiescence and agreement with the judicial interpretation").

[20] For support, the majority is inclined to look to "the way courts around the country have interpreted similar statutes." Slip op. at 6. However, our role is to instead apply Indiana law—and when we are faced with an ambiguous statute, we turn to our canons of construction to discern the legislature's intent. *See Day*, 57 N.E.3d at 813; *see also Consumer Attorney Servs., P.A. v. State*, 71 N.E.3d 362 (Ind. 2017). No canon is absolute, rather, these "'rules or maxims of construction are flexible aids to the search for meaning.'" *Brownsburg Area Patrons Affecting Change v. Baldwin*, 714 N.E.2d 135, 139 (Ind. 1999). Moreover, the legislature has codified several canons in articulating general rules of construction for the Indiana Code. *See* I.C. § 1-1-4-1 (setting forth rules of construction, and noting that "[t]he construction of all statutes of this state shall be by [these] rules, unless the construction is plainly repugnant to the intent of the legislature or of the context of the statute").

[21] Because this is a criminal case, the rule of lenity applies. *See Day*, 57 N.E.3d at 813; *Adams v. State*, 960 N.E.2d 793, 798 (Ind. 2012); *Johnson v. State*, No. 32A05-1604-CR-703, slip op. at 2, 8 (Ind. Ct. App. Apr. 19, 2017). Under this rule, appellate courts are to "interpret[] the statute in the defendant's favor as far as the language can reasonably support." *Day*, 57 N.E.3d at 813. Thus, if a reasonable interpretation of the SVF statute is that multiple firearms give rise to only one offense, then that interpretation controls. *Cf. Am. Film Distributors, Inc. v. State*, 471 N.E.2d 3, 5 (Ind. Ct. App. 1984) ("Unless there appears in the statute a clear intent to fix separate penalties . . . the issue should be resolved against turning a single transaction into multiple offenses."), *trans. denied*.

[22] There is also the "'well-settled rule . . . that words used in their singular include also their plural.'" *See Gaddis v. McCullough*, 827 N.E.2d 66, 71 (Ind. Ct. App. 2005), *trans. denied*; *see also Floyd Cty. v. City of New Albany*, 1 N.E.3d 207, 217 (Ind. Ct. App. 2014) (noting the same general rule), *trans. denied*. Indeed, the legislature has codified this common-law principle, expressly providing that "[w]ords importing the singular number only may be also applied to the plural of persons and things." I.C. § 1-1-4-1(3). This principle lends support to the reading that the singular language used in the statute—"possesses a firearm"— requires that the possession of multiple firearms amounts to one offense, and thus only one of Walton's convictions can stand.

[23] Also informative is the principle of *in pari materia*, which provides that related statutes may help us discern legislative intent. *See Klotz v. Hoyt*, 900 N.E.2d 1, 5 (Ind. 2009). "Statutes are *in pari materia*—pertain to the same subject matter— when they relate to the same person or thing, to the same class of persons or things, or have the same purpose or object." 2B Norman J. Singer & J.D. Shambie Singer, Sutherland Statutes and Statutory Construction § 51:3, at 222 (7th ed. 2007) (footnotes omitted). This principle reflects the notion that "[s]tatutes relating to the same general subject matter . . . 'should be construed together so as to produce a harmonious statutory scheme.'" *Klotz*, 900 N.E.2d at 5 (quoting *Sanders v. State*, 466 N.E.2d 424, 428 (Ind. 1984)); *see also, e.g.*, *State v. Gerhardt*, 44 N.E. 469, 476 (1896) (observing that all laws regulating liquor traffic are *in pari materia*).

[24] Under the principle of *in pari materia*, courts are to consider comparable statutes when examining the statute at issue. Here, the statute concerns firearms and prohibits those with a certain status—serious violent felons—from possessing them. *See* I.C. § 35-47-4-5(c). Yet, generally, it is not unlawful to possess a firearm, and our body politic has decided that there is nothing inherent in most guns[6] that makes their possession illegal. Rather, it is the status of the person possessing the gun that determines whether the possession of it is illegal. In the instant case, a determination was made that Walton, having been proven to be a serious violent felon, was also found to be in possession of a firearm. Similarly, there are status offenses making it a crime for a convicted domestic batterer to possess a firearm, *see* I.C. § 35-47-4-6, just as it is a crime to carry a handgun without the proper license to do so. *See* I.C. § 35-47-2-1.

[25] At bottom, the possession of guns is lawful for some but not lawful for all. In this sense, the statute prohibiting those under the age of twenty-one from "possess[ing] an alcoholic beverage" is related to the instant statute, in that being underage is an identifiable status and alcohol is otherwise lawful to possess. *See* I.C. § 7.1-5-7-7. Related in this way, too, is the statute prohibiting the possession of cocaine or narcotic drugs by those who lack the proper status: holding a valid prescription.[7] *See* I.C. § 35-48-4-6. Notably, though, in

---

[6] *See* I.C. § 35-47-5-8 (providing that it is a criminal offense to possess a machine gun).

[7] Of note, these status-based offenses differ in a key respect from pure possession offenses. That is, unlike the offense of possession of child pornography, for example, where each image constitutes an additional affront to the victim or victims, here, the possession of a gun—without more—is not illegal. *See, e.g.*, *Brown v. State*,

criminalizing the possession of certain drugs by non-prescription-holders, the legislature expressly elevated the offense based on the quantity of drugs in possession. *See id.* (providing, *e.g.*, that the offense is a Level 4 felony if "the amount of the drug involved is at least ten (10) but less than twenty-eight (28) grams" and elevating the offense to a Level 3 felony if the amount is at least twenty-eight grams). Here, however, the legislature did not provide for elevation of the instant offense based on the quantity of firearms in possession, just as the legislature did not elevate the offense of underage possession of alcohol based on the quantity possessed. Yet, just because the legislature created an elevation framework for certain offenses and not for other offenses, it does not necessarily follow that, here, the legislature intended to create a distinct punishable offense for each item of contraband. Rather, the lack of a quantity-based elevation scheme does not, in and of itself, unambiguously speak to the intended number of punishable offenses.

[26] Continuing with the principle of *in pari materia*, it is useful to take a closer look at those statutes contained in Article 47, which concerns weapons and instruments of violence, the same general subject matter as the instant statute. Within Article 47, Indiana Code section 35-47-2-3 sets forth the process to obtain a license to carry a handgun. This statute is closely related to the instant statute because it involves the same subject—guns—as well as a similar object—

912 N.E.2d 881 (Ind. Ct. App. 2009) (conducting statutory interpretation and providing a thoughtful analysis of the harms and policy concerns associated with child pornography).

controlling who may lawfully carry them. Further, just as it is a criminal offense for a serious violent felon to possess a firearm, it is a criminal offense to carry a handgun without a license. *See* I.C. §§ 35-47-2-1, 35-47-2-3.

[27] Turning to the licensing statute, it is notable that the statute refers to the license as a "license to carry a handgun." *See* I.C. § 35-47-2-3. Indeed, the legislature selected the singular form, not the plural "license to carry handguns." *See id.* Yet, the "license to carry a handgun" allows the licensee to carry not just one handgun, but "any handgun lawfully possessed by the applicant." *See* I.C. § 35-47-2-3(e). Thus, in drafting a closely related statute, the legislature chose to create a "license to carry a handgun" that is repeatedly expressed in the singular, but nevertheless not limited to a single handgun. Given the legislature's choice to use the singular there and here, it would be illogical to conclude that, here, the legislature clearly expressed the intent to establish a separate offense for each weapon. Rather, the singular language in the licensing statute supports the reading that the instant language—"possesses a firearm"— extends to all firearms possessed at a given time, creating a single status offense.

[28] Ultimately, in light of these canons of construction, it is reasonable to construe the instant statute as criminalizing—as a single punishable offense—the status of being a serious violent felon in possession of one or more firearms. Therefore, under the rule of lenity, the statute must be interpreted in Walton's favor. *See Day*, 57 N.E.3d at 813 (noting that statutes must be "interpret[ed] in the defendant's favor as far as the language can reasonably support"). Thus, I would conclude that when a serious violent felon possesses multiple firearms,

the possession gives rise to only one offense[8] under Indiana Code section 35-47-4-5(c), and, accordingly, only one of Walton's SVF counts may stand.

# Lesser-included Offenses

[29] The majority acknowledges that, during the sentencing hearing, the trial court made two errors relating to the controlled-buy counts. I recognize, as the majority does, that neither error is present in the written Sentencing Order and Abstract of Judgment, and I agree with the majority that merger is typically sufficient. However, immediately after the jury returned its verdict, the trial court orally "enter[ed] judgment of conviction [on] the counts." Tr. Vol. V at 105. Thus, given that the trial court orally entered judgment of conviction, there were errors at the sentencing hearing concerning these counts, and there are additional errors in this case requiring remand, I would instruct the trial court to vacate the lesser-included offenses. *Cf. Carter v. State*, 750 N.E.2d 778, 781 n.8 (Ind. 2001) ("[A] claim of multiple punishment for the same offense requires multiple judgments of conviction, entered by the trial court."); *Green v. State*, 856 N.E.2d 703. 704 (Ind. 2006) ("Where the court merges the lesser-included offense without imposing judgment, there is no need to remand on appeal to 'vacate.').

---

[8] Notably, though, the quantity of firearms may be pertinent, not as to the number of counts, but as a circumstance warranting an aggravated sentence. *See* I.C. § 35-38-1-7.1 (setting forth, without limitation, circumstances that the trial court may consider in imposing a sentence). That is, when a serious violent felon possesses multiple firearms, the felon has undertaken actions exceeding those that constitute the offense.

# Appellate Rule 7(B)

I agree with the majority's application of *Beno* and *Eckelbarger*. That is, given the close nexus between the State-sponsored purchases and the State's ability to procure Walton's drug-related convictions, I would also instruct the trial court to run Walton's drug-related counts concurrently. However, given that doing so generates a conflict with the statutory sentencing limit and effects a notable change to the aggregate sentence length selected by the trial court, I would defer to the judgment of the trial court and remand for resentencing.

For these reasons, I must respectfully dissent.