No. 24,988.

HELEN WEATHERED, *Appellant*, v. JOHN WEATHERED et al., *Appellees*.

### SYLLABUS BY THE COURT.

1. PARTITION—*Election Made Under Protest Not Binding—Right of Appeal.* The right to appeal from a judgment directing partition of real property where partition cannot be made and an appraisement of the several tracts has been made, is not defeated by an election, made under protest by the one who appeals, to take one of the tracts.

2. CONTRACT—*Dividing Real and Personal Property Between Heirs—Contract Not Binding on Minors—Not Binding on Widow.* A contract between a widow and children, the heirs of a person who died intestate, dividing among them the real and personal property belonging to the estate, signed by the widow and adult children and by the guardians of the minor children, is not binding on the minor children where the contract makes a disposition of the property as to each of the heirs different from that made by law; and, because the contract is not binding on the minor heirs, the consideration to the widow fails, and the contract is not binding on her.

3. SAME—*Signature of Widow to Contract Procured by Fraud and Undue Influence—Contract Set Aside.* Where the evidence shows conclusively that the signature of a widow to a contract dividing the estate of her husband, who had died intestate, between the widow and the children of the husband, was procured by fraud, duress, and undue influence, the contract is not binding on the widow and should be set aside.

Appeal from Kingman district court; GEORGE L. HAY, judge. Opinion filed April 5, 1924. Reversed.

*Jean Madalene,* of Wichita, and *John McKenna,* of Kingman, for the appellant.

*Clark A. Wallace,* of Kingman, and *J. A. Brubacher,* of Wichita, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: Helen Weathered commenced this action to partition certain real property, she claiming to be the owner of a one-half interest therein. Judgment was rendered declaring her to be the owner of one-eighth interest in the real property and the defendants to be the owners of the other seven-eighths interest, and ordering partition accordingly. Helen Weathered appealed. After the judgment had been rendered and the appeal taken, Helen Weathered died, and the action was revived in the name of A. H. Bishop as administrator of the estate of Helen Weathered, deceased, and as guardian and next friend of LeRoy Weathered, the sole surviving heir of Helen Weathered, deceased.

Helen Weathered, now deceased, was the widow of P. B. Weathered, who died intestate seized of a house and lots in Norwich and of 1,360 acres of land in Kingman county and who at the time of his death owned personal property of the approximate value of $10,000. He left surviving him besides his widow the following heirs: John Weathered, Laura W. Whitley, Charles W. Weathered, and Guy H. Weathered, adults, and Lola Weathered, Ralph Weathered, and LeRoy Weathered, minors. All but LeRoy Weathered were the children of P. B. Weathered by a former marriage; LeRoy Weathered was the only child of Helen Weathered and P. B. Weathered.

The adult defendants pleaded that a family settlement had been made by which Helen Weathered agreed to accept a one-eighth interest in the real property and a portion of the personal property as her share of the estate of P. B. Weathered. Helen Weathered pleaded that the settlement had been obtained by fraud, duress, and undue influence, and that she had signed the contract as guardian of LeRoy Weathered without letters of guardianship having been issued to her.

J. W. Weathered was the guardian of defendant Lola Weathered, and T. W. Estes was the guardian of defendant Ralph Weathered. Helen Weathered, after the death of P. B. Weathered, had made application to the probate court to be appointed guardian of LeRoy Weathered and an order had been made appointing her as such

guardian and fixing the amount of bond to be given, but she did not give bond nor qualify as guardian. J. W. Weathered as guardian of Lola Weathered, T. W. Estes as guardian of Ralph Weathered, and Helen Weathered as guardian of LeRoy Weathered, each signed the contract of settlement which was approved by the probate judge of Kingman county as to each of the guardians and their respective wards.

A jury was impanelled to try the cause but, after the evidence was all introduced, was discharged without returning a verdict. The court then made special findings of fact and conclusions of law. The findings were in effect that no fraud had been practiced on the plaintiff and that no duress or undue influence had been exercised over her to procure her signature to the contract, which the court found she understood and voluntarily made.

It appears that when the action was commenced, Clark A. Wallace of Kingman was appointed guardian *ad litem* for all the minor defendants.

1. A motion to dismiss the appeal, signed by Clark A. Wallace and J. A. Brubaker, as attorneys for the defendants, and by Clark A. Wallace, as guardian *ad litem* for the minor defendants, has been filed. The ground for this motion is that Helen Weathered, after the judgment had been rendered and after commissions had been appointed to make partition of the real property which they found could not be done and then made an appraisement thereof, elected to take as her share one of the tracts of land owned by P. B. Weathered in his lifetime. That election was made by Helen Weathered under protest. For that reason, the appeal will not be dismissed.

2. The plaintiff contends that the contract was not binding on the minor heirs of P. B. Weathered and that there was no consideration for it. After the death of P. B. Weathered, there was, and could be, no dispute concerning the title to the property left by him because his widow and children took as heirs under the law and the interest of each was fixed and definite. Soon after the death of P. B. Weathered, some of his adult children commenced to discuss a settlement of the estate with Helen Weathered. There was nothing to settle except to divide according to law the real property and to distribute the personal property at the close of administration of the estate. Helen Weathered wrote some of the defendants as follows:

"Dear Children: I am tired so will only write a few lines. My tongue is still sore and I am afraid I will have to go back and have it treated. John and Charles said they wanted a settlement. I will be glad to have it settled and the worry. They asked for my plan so here it is—I am sending a copy to each one.

"My proposition for settling the estate.

"That each child have a quarter section of land, that will leave one and one-half quarters for me, so I will choose the Quillan place as that is the only quarter and eighty lying together. I will pay this year's taxes and settle everything up and when that is done, the estate collected in, I will pay Lola, Ralph, and LeRoy each Three Thousand Dollars to offset what you older children have already had. I think when all that is paid it will leave me the home in town, the five hundred in bank stock and the liberty bonds and one and one-half quarters of land. The income from the bonds and bank stock amount to about four hundred per year so that with what I would average from the land it would make an income when taxes are paid of about eight or nine hundred dollars a year. I do not want to have to use the principal so that at my death it can be divided among you children. If I were younger and had good health I might live on less but one never knows what the future may hold and I do not want to live on charity. I can say truthfully that papa never asked me to take a child's share. When we were first married he remarked that if he died one-half of all he had would go to me. I told him at that time I would not claim one-half I would take a child's share and that I would not try to bring up children without him. You would have to go to your relatives. But as years passed and you children went for yourselves and this cancer began troubling me I said I could not live on a child's share and he always agreed with me. If he had wanted me to have only that he could have made a will to that effect."

The contract did not give her what she asked in this letter. She did not get the land she desired, nor the bonds, nor the bankstock. The contract gave her one-eighth of the land, and contained the following:

"Second parties agree and do hereby convey unto the said party of the first [part] a life estate in and to all of the following described real estate, to-wit: Lots Nos. One to Twelve, inclusive, in Block Forty-Two, in the Town of Norwich, Kansas, as and for a home, and agree that during the lifetime of the said first party she shall have the use, occupancy and control of said premises and the right to collect any rents due thereon, and first party agrees that during her lifetime she shall pay all taxes assessed against said premises, and that she keep same insured to a reasonable amount and that all premiums shall be paid by her, and further agrees to commit no waste upon said premises and to keep same in a reasonable state of repair, and that upon her death said property shall be divided among the seven children share and share alike, them and their heirs and assigns, forever.

"Second parties further agree that no distribution or division shall be had or made, during the lifetime of the said first party of the eight thousand dol-

lars ($8,000.00) of Liberty Bonds and the Five Hundred Dollars ($500.00) of Capital Stock of the Farmers State Bank of Norwich, Kansas, and that said first party shall be entitled to all dividends, interest, and other income arising from said liberty bonds and bank stock during her lifetime, and that at her death same shall be divided in the same manner as the real estate, above described."

That contract concerned the disposition of real property owned by the minors and concerned their share in the personal estate of P. B. Weathered. There was no proceeding of any kind pending in the probate court giving to that court any authority whatever to make any disposition of the real property owned by the minors, or to make any order concerning their interest in the personal estate of P. B. Weathered. No application of any kind had been made; no notice had been given; nothing was pending. The probate court was, therefore, without jurisdiction to make any order concerning either class of property. The approval of the contract made by the probate judge amounted to nothing. It was not a judicial act. The guardians of the minors could not contract concerning any change in the minors' interest in the real property nor concerning a change in the distribution as provided by law of the minors' share of the personal estate of P. B. Weathered.

In *Beachy v. Shomber,* 73 Kan. 62, 84 Pac. 547, this court said:

"The notice required by the statute to be given to a ward of the hearing of his guardian's application for leave to sell his real estate is jurisdictional, and a deed made without such notice's having been given is void, and subject to a collateral attack."

It may be argued that the contract was beneficial to the minors because it increased their interest in the real property and gave them $3,000 each in addition to their share of the personal property. The provision for $3,000 to each minor attempted to offset or equalize the $3,000 advancements that had been made by P. B. Weathered to each of the adult heirs. The minors each owned an interest in the property in Norwich and each owned an interest in the $8,000 liberty bonds and $500 bankstock. The contract undertook to dispose of the interest of the minors in the property in Norwich and the liberty bonds and the bank stock for and during the life of Helen Weathered. That the guardians could not do. (28 C. J. 1133, § 219; 1136, § 223.) That provision of the contract was not binding on the minors. Since it was not binding on the minors, it was not binding on Helen Weathered, nor any of the other parties to it.

In *Ritchie v. Rawlings,* 106 Kan. 118, 120, 186 Pac. 1033, the court used the following language:

"The letter sent to Ritchie was a proposal, and required an acceptance before it could become a contract. The proposal was for an agreement in the nature of a voluntary partition. It contemplated a division of real and personal property among those entitled thereto, in a different proportion from that to which they were entitled as a matter of legal right. Until a contract of that character became binding upon all the parties, it would bind none of them."

At the time Helen Weathered signed the contract for LeRoy Weathered, she had not qualified as his guardian and could not act as such. There was no one authorized to act for him. Neither he nor any one authorized to act for him signed for him. The contract is not binding on him.

What the guardians for the minors gave, or what they agreed to give, to Helen Weathered was part of the consideration for what she gave under the contract. What the minors attempted to give, or their guardians for them agreed to give, could not be given. That part of the consideration failed. That part of the contract could be avoided by the minors. For that reason, the contract fails. (6 R. C. L. 686.)

3. Another matter complained of concerns the finding of the court that no fraud was practiced on Helen Weathered or duress or undue influence exercised over her. She testified that some of the adult children of P. B. Weathered insinuated that she had administered poison to him and thereby caused his death. That testimony was denied. Guy Weathered, one of the adult defendants, testified:

"Q. Well, now, I will ask you what was said about your father's death, what was said by Laura? A. Well I do not know exactly.

"Q. Well as near as you can—the substance. A. My sister was there.

"Q. That is Laura, your sister? A. Yes—she says—'there is one thing that I do not feel quite right about, really to know what caused papa's death. I would give more than what is coming to me to know what caused papa's death,' she said—so mama said it looked like you are kinder throwing insinuations that I got rid of papa and Laura spoke up and said 'I accuse you of nothing'—then I asked—then she asked her what she meant and my sister said she did not feel right not to know what caused his death."

A short time after the death of her husband, Helen Weathered appealed to John Weathered, her husband's brother, for protection and advice. He promised to give it, and she relied on his doing so. The adult heirs visited her some weeks after her husband's

death and insisted on a settlement. They went to Kingman for the purpose of making it. John Weathered went with them. He suggested or advised them it was not necessary to see a lawyer until they had agreed on the terms of the settlement. The contract was drawn by a lawyer, but immediately after it was signed, Helen Weathered expressed dissatisfaction with it because of the provisions concerning the liberty bonds and the bank stock. She appealed to her brother-in-law, John Weathered. All were in the lawyer's office. The two, Helen Weathered and John Weathered, went out into the hall. The abstract shows that John Weathered testified as follows:

"Q. All right, I ask you as to what took place out in the hall. — Go ahead and tell us about it. A. As I said she made a little complaint—she said she just wanted to get this and I says 'Helen, you got those absolutely as far as your own use is concerned,' I says, 'you have the income from the bonds and the stock' and I says 'those are given to you, they are yours beyond any doubt according to that contract; they are yours beyond any doubt in your lifetime, what do you mean to ask for anything more unless you want to take them to heaven with you, or some other place,'—that is the exact words.

"Q. When you came back did you say anything to the children? A. Yes, I did.

"Q. What was it? A. I said that Helen is complaining—that she thinks that she was to have those liberty bonds given to her as her own so that she could have them to do as she pleased with them and I says, she seems to be afraid she might come to want, or something of that kind, now, I say, if she should come to want, would you children be willing for to see that she never comes to want, and they answered they would. I think that is the rest of the conversation right then."

On cross-examination, John Weathered testified that he had suggested to her that she should take a child's share. The abstract shows that John Weathered on that subject testified as follows:

"Q. Didn't you tell her to—that she would have to take a child's share, now didn't you? A. I didn't tell her she had to or that she must take a child's share or that I would force her to do that—to take a child's share, or anything of that kind, but I told her that my brother requested me to tell her to do that. I am interested not in dollars and cents but to see that the requests of my brother are carried out."

Helen Weathered had appealed to John Weathered to protect and advise her. He knew, or should have known, that she owned one-half of the property that had been owned by her husband. He should have so advised her, instead of suggesting to her that she take a child's share. His acts constituted a fraud on her. The defendants benefited by that fraud. The contract obtained through

that fraud should not be permitted to stand.   The property of widows and of children is too often taken away from them by persons who pretend to act in the capacity of friends, protectors, and advisers, but who are working in their own interest or in the interest of some one else.   The contract was procured by fraud, duress, and undue influence.

The judgment is reversed, and-the trial court is directed to order partition of the real property in accordance with the prayer of the petition.