NOT DESIGNATED FOR PUBLICATION

No. 128,162

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

T.S. and T.S.,
*Appellants*,

v.

DCC PROPANE, LLC,
and
DWIGHT BAER,
*Appellees*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WILLIAM S. WOOLLEY, judge. Oral argument held November 18, 2025. Opinion filed May 29, 2026. Affirmed in part, reversed in part, and remanded with directions.

*James R. Howell*, of Prochaska, Howell & Prochaska, LLC, of Wichita, for appellants.

*Andrew L. Foulston* and *Scott E. Sanders*, of McDonald Tinker PA, of Wichita, for appellees.

Before PICKERING, P.J., SCHROEDER and HURST, JJ.

HURST, J.:  After an automobile accident and associated litigation that included claims for injuries to minors, the parties mediated and came to an agreement to settle their dispute. This resolution was evidenced by a minimally detailed written mediation settlement document that purported to include the minors' claims. However, the parties had difficulty finally resolving the matter because of disagreements about how to handle the minors' claims pursuant to K.S.A. 2023 Supp. 38-152 and the release language.

1

Both parties eventually sought to enforce the mediated settlement. The plaintiffs also moved for attorney fees and statutory interest under K.S.A. 40-2,126 resulting from the defendants' failure to pay the settlement amount within 30 days. The parties eventually entered into an agreed final settlement and release agreement. Thereafter, the district court denied the requested enforcement, including associated interest and attorney fees, reasoning that the settlement agreement was not enforceable until the final settlement and release agreement was signed in April 2024. The plaintiffs appeal seeking statutory interest for the defendants' failure to pay the settlement amount as of 30 days from the mediation and for associated attorney fees.

The record on appeal demonstrates that the written mediation settlement became binding and enforceable once the parties met the statutory requirements for the minors' claims under K.S.A. 2023 Supp. 38-152, which occurred several months before they executed the final settlement and release agreement. The plain language of K.S.A. 40-2,126 permits claimants, which is not limited to insureds or policyholders, to seek recovery of interest for late payment of agreed settlement proceeds due under a contract of insurance. If the district court determines the plaintiffs meet all the statutory prerequisites to pursue interest under K.S.A. 40-2,126, it must then determine whether the plaintiffs are entitled to such interest under the facts here related to the parties' dilatory conduct and the defendants' attempts to make payment. Additionally, the district court did not err in denying the plaintiffs' request for attorney fees. The district court is affirmed in part, reversed in part, and this matter is remanded with directions.

FACTUAL AND PROCEDURAL BACKGROUND

On January 22, 2019, an employee of DCC Propane, LLC, was driving a propane delivery truck as part of his employment when his vehicle collided with the one driven and occupied by T.S. and T.S. (Plaintiffs), a married couple. One of the Plaintiffs was pregnant with twins at the time of the accident. About a year after the accident, Plaintiffs

2

initiated litigation against the driver and DCC Propane (Defendants), alleging injuries and seeking associated damages. That litigation started as separate cases that were then consolidated and included damages related to the twin infants delivered shortly after the accident.

On September 22, 2023, the parties attended mediation and came to an agreement to settle the litigation: Plaintiffs agreed to accept a specific dollar amount (the Settlement Proceeds) "in full settlement of all claims against defendant as described in the pleadings filed in court case no. 20CV456." This written agreement, hereinafter referred to as the September Settlement Document, also provided that "[Plaintiffs] agree[] to satisfy all valid and enforceable liens, if any, arising from this occurrence." The September Settlement Document states the Defendants would pay statutory court costs and mediation fees and contains handwritten language stating, "[Plaintiffs] agree on behalf of their children and release any claim."

On September 26, 2023, counsel for Defendants notified the district court via email that the parties had reached a settlement agreement.

*The Efforts to Finalize the September Settlement*

The timing and exchanges regarding the September Settlement Document and Defendants' alleged attempts to tender the Settlement Proceeds over the next few months form some of the basis for this appeal. The parties exchanged emails during September and October 2023 regarding how to address the minor children's claims and the terms of a finalized release, but they could not come to an agreement.

On November 17, 2023, Defendants moved to enforce the September Settlement Document—seemingly admitting it was a binding settlement agreement. On November 21, Plaintiffs also moved to enforce the September Settlement Document, and they later moved for an award of interest under K.S.A. 40-2,126.

Defendants offered to give the checks representing the Settlement Proceeds to Plaintiffs' counsel twice in December but requested that no monies be distributed until the district court ruled on all pending motions. On December 7, 2023, Defendants' counsel sent the following email to Plaintiffs' counsel:

> "We have in our possession 3 settlement checks which are made payable to '[Plaintiffs] and their attorney' . . . per your directives. The checks are in the following amounts:
>
> 1. $[ ] issued from DCC for the first part of the settlement total;
> 2. $[ ] issued from Chubb for the second part of the settlement total;
> 3. $[ ] issued from Chubb for court costs.
>
> "We have been holding these 3 checks in our firm safe pending the Court's approval and apportionment as to the settlement as to the claims of the [Plaintiffs'] children. However, assuming you agree to hold them in your firm's trust account pending the Court's decision and directives as to the minors, you can make arrangements to come by our office and pick up the checks.
>
> "Alternatively, if the Court would prefer to have the checks held at the Courthouse, we can make arrangements to have them delivered to the Court.
>
> "Please let us know how you would like to proceed."

Plaintiffs refused to accept or hold the Settlement Proceeds checks, allegedly because Defendants requested that the checks be held in the Plaintiffs' trust account pending the district court's rulings on pending motions. Defendants explained:

"Plaintiffs cannot accept your attempt at a tender. First, it is conditional, meaning that they would not have use of the funds until some future date, when your conditions on use of the money are satisfied. That could be months or years should we need to appeal Judge Woolley's ruling(s). Second, my trust account bears no interest, while the applicable statute requires defendants' insurers to pay 18% per annum until the full settlement amount is satisfied. That would cost my clients a great deal in lost interest, particularly if this situation continues for months. Third, your conditional [']tender' does not satisfy the intent and purpose of the interest statute.

"Should you be willing to include interest in your offer and remove the conditions on use of the money, my clients might be willing to consider it."

On December 10, 2023, Plaintiffs submitted affidavits complying with K.S.A. 2023 Supp. 38-152, which will be addressed below. On December 27, Defendants again tried to pay the Settlement Proceeds to Plaintiffs. Defendants noted the three settlement checks and acknowledged that Plaintiffs submitted the required affidavits under K.S.A. 2023 Supp. 38-152 on December 10. Like before, the correspondence referenced the pending court proceedings:

"With regard to the two separate checks totaling $[ ], the same shall be deposited in your firm's client trust account. However, said funds shall remain in said trust account pending the Court's ruling on the Motions to Enforce Settlement. Once the Court makes a ruling as to the execution of the appropriate release formalizing the preliminary agreement, the funds may be distributed from your firm's client trust account pursuant to the Court's directives."

On December 27, Plaintiffs filed an amended motion to enforce that included a request for attorney fees. Plaintiffs' counsel responded via a letter dated January 29, 2024, indicating that Plaintiffs were returning the settlement checks and could not accept them under the condition they be held pending the court's resolution of their disputes for fear the acceptance would impact the outcome of the pending issues. Plaintiffs argued that "A

proper tender must be 'absolute and unconditional to be effectual.'" The letter explained that counsel did not believe it appropriate to "bear the additional liability for safekeeping such a large amount of funds interest free until such unknown times as the money actually becomes the property of the Plaintiffs." Plaintiffs' counsel reasoned that accepting the payment conditionally would "cost my clients a large amount in lost interest, as it currently is running at 18% on the amounts agreed on in September."

*The Hearing on The Parties' Motions to Enforce Settlement*

On January 17, 2024, the district court held a hearing on the parties' respective motions to enforce the September Settlement Document. The court heard argument on two issues at the hearing: (1) whether the September Settlement Document was final on the day it was executed at mediation and what terms were appropriate; and (2) whether Plaintiffs were entitled to interest. The court did not make any rulings at this hearing.

On February 9, 2024, Defendants moved for an order allowing them to deposit the Settlement Proceeds into the district court as Plaintiffs' counsel had already refused to accept the payment. Plaintiffs opposed the motion. On February 21, Plaintiffs filed motions for declaratory judgment and judgment as a matter of law, including a request for interest under K.S.A. 40-2,126 and attorney fees for prosecuting their motion pursuant to K.S.A. 60-2002, K.S.A. 40-256, and K.S.A. 40-908.

On April 11, 2024, counsel for Defendants sent version six of the proposed final settlement and release agreement to Plaintiffs' counsel. Just a few days later, on April 16, Plaintiffs agreed to execute version six with the understanding that it excluded the issues of interest and fees, which "may be taken up later." Plaintiffs also requested a new draft of the "Agreed Order of Dismissal with Prejudice" for review. That same day, Plaintiffs' counsel emailed the district court stating that Plaintiffs accepted version six which became the final settlement and release agreement (Final Settlement and Release

6

Agreement). Later that day, Plaintiffs' counsel emailed the court and indicated the parties' agreement "renders all pending motions moot, with the exception of Plaintiffs' claims for statutory interest and any claims for attorney fees implicated by the motions . . . or that are otherwise appropriate under Kansas law."

*The Court's Final Hearings*

The district court held a hearing on April 17, 2024. Counsel for Defendants attended, but neither Plaintiffs nor their counsel appeared. At the start of the hearing, the court outlined the recent history of the case, especially regarding the motions and hearings taking place in the winter of 2023 and early part of 2024. The court indicated the hearing was to discuss Plaintiffs' requests for interest and fees and said it was ready to rule, but because Plaintiffs and their counsel were not present, the court would set the matter for another hearing so it could rule before all parties.

Before the hearing concluded, Defendants' counsel inquired as to the purpose of the next hearing and clarified that it was not to include additional argument: "The hearing that is going to be scheduled is just to hear—is just so that you can announce your ruling, it's not an invitation for argument. It's just to have people here and this is not an invitation for more opinions." The judge responded, "I will try to make it clear. No more argument, no more papers . . . and whether arguments in papers filed or arguments in e-mails, or whatever. The only issue is my ruling. Okay?"

On May 1, 2024, the district court held a hearing where it denied Plaintiffs' motion for interest after finding the settlement payment was not "due until the parties signed on the dotted line, until the [K.S.A.] 38-152 procedure was established and followed, and the nature, extent and settlement of the medical [liens] was resolved." The judge also said:

7

"[I]t's not unusual for me to do a minute sheet, and the minute sheet will say the motion is denied for the reasons stated into the record, which are incorporated herein. . . . And then that minute sheet will be my order resolving it, and that will start any appeal time."

On May 3, 2024, the district court issued motion minutes orders that contained or clarified the status on five motions: (1) denied Plaintiffs' motion for interest; (2) denied Plaintiffs' motion for declaratory judgment; (3) found Defendants' motion to deposit funds into the court moot; (4) denied Plaintiffs' amended motion to enforce as to the issue of attorney fees and ruled the remainder of the motion was moot; and (5) found Defendants' motion to enforce withdrawn as moot. On that same day, the district court filed two supplemental orders regarding its denial of Plaintiffs' request for attorney fees where the court declined to exercise its inherent power to sanction Defendants and ruled that an award of attorney fees was unwarranted under the facts.

On May 20, 2024, Plaintiffs filed an "objection to proposed journal entry" of dismissal, arguing they were entitled to submit argument on the issues of interest and attorney fees. The court held a hearing on the objection on June 25, 2024, and Plaintiffs argued they never agreed to dismiss the case while the matters of interest and attorney fees were still pending. Plaintiffs argued the court still needed to issue an order on those outstanding matters and dismiss the case. The district court explained the history of the case in terms of the hearings it had held and found it had ruled on all outstanding issues as of May 3, 2024. Finding nothing left to be decided, the court dismissed the matter. After the hearing, the district court issued a "Minutes/Order" dated June 25, 2024, that stated, in part, "Objections overruled . . . case dismissed with prejudice." The minutes order also included a checked box indicating no further journal entry or order would be required. Plaintiffs filed their notice of appeal on July 24.

8

Plaintiffs raise several issues on appeal, which all center on their ability to seek interest for late payment of the Settlement Proceeds pursuant to K.S.A. 40-2,126. Plaintiffs assert the following claims:

1.  The district court erred in denying Plaintiffs' motion for declaratory judgment and motion for interest because there was a binding settlement contract entered on September 22, 2023, that triggered K.S.A. 40-2,126;

2.  The district court erred by adding terms and conditions to the settlement agreement from mediation related to the minor children beneficiaries;

3.  The district court erred in denying Plaintiffs' motion for attorney fees related to the motion for declaratory judgment and motion for interest; and

4.  The district court erred in ruling that a portion of the Settlement Proceeds was not subject to interest accumulation under K.S.A. 40-2,126.

Each of Plaintiffs' claims requires this court to determine whether the September Settlement Document was binding and, if so, when it became enforceable. If this court finds the September Settlement Document binding and enforceable, it must then determine whether Plaintiffs can pursue interest payments due to late payment of the Settlement Proceeds under K.S.A. 40-2,126.

I.    THE SEPTEMBER SETTLEMENT DOCUMENT FORMED A BINDING AGREEMENT

The parties' participation in mediation resulted in a signed one-page document—the September Settlement Document—which contains minimal detail. Although the parties dispute whether the September Settlement Document constitutes a binding, enforceable settlement agreement as of its execution date on September 22, 2023—neither seems to contend the parties failed to have a meeting of the minds. The September

Settlement Document listed the Plaintiffs' names and the settlement amount owed to Plaintiffs in "full settlement of all claims against defendant as described in the pleadings filed in court case no. 20CV456." The September Settlement Document stated that Plaintiffs would satisfy "all valid and enforceable liens, if any, arising from this occurrence," and Defendants would pay court costs and mediation fees. Finally, it included a handwritten line that provided for a release in that, "Plaintiffs agree on behalf of their children and release any claim." The dispute here stems from the minimalism of the September Settlement Document.

However, the lack of formality and typicality in the September Settlement Document does not necessarily render it ineffective to create a binding settlement agreement. Kansas "favors compromise and settlement of disputes." *Krantz v. University of Kansas*, 271 Kan. 234, 241-42, 21 P.3d 561 (2001). In Kansas, settlement agreements are treated like contracts, meaning the same legal principles concerning their creation and interpretation apply. *Spiess v. Meyers*, 483 F. Supp. 2d 1082, 1091 (D. Kan. 2007). Parties form a binding contract when there exists "a meeting of the minds as to all essential terms thereof." *Dougan v. Rossville Drainage Dist.*, 270 Kan. 468, 488, 15 P.3d 338 (2000). The basics of contract formation merely require an offer as to the material or essential terms from someone with authority to make the offer and an unconditional acceptance of that offer by a party with authority to accept. See *Nungesser v. Bryant*, 283 Kan. 550, 565-66, 153 P.3d 1277 (2007). The parties conflate the requirements to create a binding agreement with those for enforcement. See *Stephenson v. Young*, No. 10-2197-KHV, 2011 WL 2112021, at *2-3 (D. Kan. 2011) (unpublished opinion). A binding agreement may exist where its terms are as yet unenforceable.

Here, neither party contends that the persons who signed the September Settlement Document lacked authority, or that there was not agreement as to the essential terms of the settlement amount, the parties, or the agreement to release claims. See *Borsody v. Federal Express Corporation*, No. 2:24-CV-02073-HLT-ADM, 2025 WL 465913, at *3

10

(D. Kan. 2025) (unpublished opinion) ("'The material terms of a settlement agreement typically include "references to the case, the parties, the plaintiff's promise to dismiss the lawsuit and release liability, and the payment of settlement monies by the defendant."'"). The Defendants merely contend that the obvious minimalism of the September Settlement Document, including a lack of specific release language, demonstrates a need for a more robust settlement and release agreement.

However, the need for more definite terms, if such a need existed, does not prevent the formation of a binding settlement agreement as of September 22, 2023. Because the parties do not dispute that persons with authority agreed to the essential, material terms, and there is nothing in the record establishing that the parties intended to forgo acceptance pending the finalization of other terms, then the September Settlement Document can create a binding agreement. See *Borsody*, 2025 WL 465913, at *3 ("The fact that the parties intend to execute a more formal agreement later does not mean that they have not already bound themselves to an agreement."); *Towers v. Wyandotte County Sheriff's Office*, No. 17-2615-JAR-TJJ, 2018 WL 6324867, at *7 (D. Kan. 2018) (unpublished opinion) ("In the ordinary course of settling litigation, documents implementing the settlement agreement are typically and necessarily left for future handling by the parties."); *United States ex rel. Quality Trust, Inc. v. Cajun Contractors, Inc.*, No. 04-4157-SAC, 2008 WL 410121, at *7-8 (D. Kan. 2008) (unpublished opinion) (where there is no indication either party intended to condition the settlement agreement on "further negotiations, the resolution of additional terms, or the reduction of those terms to writing," the settlement agreement is enforceable).

The formation of a contract "depends on the intention of the parties and is a question of fact." *Reimer v. The Waldinger Corp*., 265 Kan. 212, 214, 959 P.2d 914 (1998). Here, the facts show that the parties intended to form a binding settlement agreement (a contract) through the September Settlement Document. This conclusion is supported by Defendants' September 26, 2023 email to the court in which counsel stated,

11

"this case settled at a mediation on Friday. Once the details of the settlement are hammered out, I will submit a dismissal with prejudice for entry and filing. . . . [Y]ou can remove the case from the pretrial and trial dockets." Further, on November 17—before the parties executed the Final Settlement and Release Agreement in April 2024—Defendants moved to enforce the very settlement agreement they now argue was just a preliminary agreement.

During litigation, it is common for the parties when reaching a resolution through settlement negotiations, to agree to the material terms and form a binding settlement agreement that then gives way to a robust and complete written agreement evidencing the full extent of their resolution. The Kansas Supreme Court has found that parties are bound to a contract even though they expressly provide that new matters will later be incorporated into the original agreement. *Phillips & Easton Supply Co., Inc. v. Eleanor International, Inc.*, 212 Kan. 730, 735, 512 P.2d 379 (1973).

While a binding agreement formed as of September 22, 2023—that does not mean the contract was legally enforceable as of that date. There is a difference between the existence of a binding settlement agreement and a legally enforceable settlement contract requiring performance. While a condition precedent does not prohibit contract formation, it can become part of the contract such that one party's performance under the contract depends on the completion of that condition precedent. See *Wallerius v. Hare*, 200 Kan. 578, 581, 438 P.2d 65 (1968); *Stephenson*, 2011 WL 2112021, at *3-4. As explained below, the September Settlement Document was not an enforceable contract until the parties complied with K.S.A. 2023 Supp. 38-152.

*The Impact of K.S.A. 2023 Supp. 38-152*

Defendants contend that because the September Settlement Document included a release of minors' interests, it could not be final and enforceable until those

12

considerations were met. See *Hudgens v. CNA/Continental Cas. Co.*, 252 Kan. 478, 484, 845 P.2d 694 (1993) (agreement "not a completed settlement" until court approval); K.S.A. 2023 Supp. 38-152. The district court agreed that because the settlement agreement included the release of the two minors' claims, the parties needed to comply with K.S.A. 2023 Supp. 38-152 before the September Settlement Document became enforceable.

On appeal, Plaintiffs contend that the September Settlement Document did not require court approval because (1) Defendants did not request a "reservation of a condition precedent in the mediation settlement agreement as to how Plaintiffs had chosen to apportion and distribute funds" to the minor children, and (2) K.S.A. 2023 Supp. 38-152 was inapplicable because "the decision to apportion and marshal the minors' settlement funds under the circumstances was none of the court's business." Plaintiffs provide no legal citation supporting either conclusion. According to Plaintiffs, because they decided to apportion some of the Settlement Proceeds to the minors—which was not stated in the September Settlement Document—no court approval was required for the settlement. Again, they offer no legal citation for that conclusion. Failure to support a point with pertinent authority or failure to show why a point is sound despite a lack of supporting authority or in the face of contrary authority is like failing to brief the issue. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018).

Kansas has long recognized the need to protect minors' interests in settlements that release claims on their behalf. See *Heuton v. United States*, No. 24-2065-DDC, 2026 WL 554482, at *6-7 (D. Kan. 2026) (unpublished opinion). Before July 1, 2023, Kansas law provided that a settlement involving a minor required court approval before it was enforceable. See *Childs v. Williams*, 243 Kan. 441, 441, 757 P.2d 302 (1988); *Hartford Life & Accident Insurance Company v. Nebergall*, No. 21-1184-JAR-JPO, 2021 WL 5769357, at *2 (D. Kan. 2021) (unpublished opinion). Therefore, if a contract that purports to release minors' interests is not yet enforceable as to the minors, it is not

13

enforceable as to the parties. See *Weathered v. Weathered*, 115 Kan. 744, 748, 224 P. 901 (1924) (contract not binding on minors is not binding on the parties); see also *Heuton*, 2026 WL 554482, at \*6-7 (denying approval of settlement document when apportionment to minor was insufficient).

On July 1, 2023, Senate Bill 243, codified as K.S.A. 2023 Supp. 38-152, made it easier for parents and guardians to enter settlement agreements on behalf of minors without court approval. See L. 2023, ch. 65, § 1. Under the new statute, so long as a settlement agreement on behalf of a minor meets certain requirements set forth in subsection (a), then court approval is not required:

> "A signed settlement agreement entered into on behalf of the minor in compliance with subsection (a) is binding on the minor without the need for court approval or review, has the same force and effect as if the minor were a competent adult entering into the settlement agreement, shall serve to fully release all claims of the minor encompassed by the settlement agreement and may be relied on by a financial institution or other entity, in lieu of a court order, when opening a restricted savings or other restricted investment account or purchasing an annuity on behalf of a minor pursuant to this section." K.S.A. 2023 Supp. 38-152(e).

That means, under K.S.A. 2023 Supp. 38-152, a settlement agreement releasing a minor's claims can be binding and enforceable without court approval if the parties are in full compliance with subsection (a).

K.S.A. 2023 Supp. 38-152(a) provides that "[a] person having legal custody of a minor may settle or compromise and enter into a settlement agreement with a person against whom the minor has a claim" without obtaining court approval if:

- The minor does not have a guardian or a conservator appointed; and
- The settlement is for $25,000 or less; and

14

- The person entering the settlement agreement on behalf of the minor completes an affidavit that:
    1. The minor will be fully compensated by the settlement; or
    2. There is no practical way to get more money from the party entering the settlement agreement.
    3. The minor's settlement must be deposited directly into a restricted savings or other restricted investment account or used to purchase an annuity as set forth in the statute. K.S.A. 2023 Supp. 38-152(a)(4)(A)-(B).

The statute also sets forth specific requirements about the payment and how it must be made and held. K.S.A. 2023 Supp. 38-152(c), (d).

It is uncontroverted that the September Settlement Document did not fully comply with K.S.A. 2023 Supp. 38-152(a) and Plaintiffs did not execute an affidavit in compliance with K.S.A. 2023 Supp. 38-152(a)(4) at the mediation. Therefore, as of September 22, 2023, the September Settlement Document was not enforceable *without* court approval because the parties had not complied with K.S.A. 2023 Supp. 38-152(a). Plaintiffs contend that on October 17, 2023, they provided Defendants with an affidavit in compliance with K.S.A. 2023 Supp. 38-152(a)—but they offer no fact cite supporting that claim. See Kansas Supreme Court Rule 6.02(a)(4) (2026 Kan. Sup. Ct. R. at 36) (requiring pinpoint citations to the record on appeal).

The record shows that the October affidavits were not executed but were in draft form. Plaintiffs' contention that these documents represent affidavits in compliance with K.S.A. 2023 Supp. 38-152(a)(4) is inaccurate at best. Plaintiffs' counsel's email sharing the documents says, "[p]lease see the attached affidavits" and notes "[t]hey should be sufficient to satisfy your concerns regarding the minors" and then asks for the release as soon as possible. Defendants' counsel responded by email the next day stating that he

15

"had an opportunity to review your proposed affidavits" and "have added some additional information to both affidavits" and "have attached my revised affidavits." Then on October 19, 2023, counsel for Defendants requested that Plaintiffs' counsel "[p]lease forward me the signed affidavits which I will incorporate as attachments to the settlement agreement," clearly indicating that the documents had not been executed. Moreover, an October 24, 2023 email from Plaintiffs' counsel objecting to drafts from Defendants' counsel states that the Plaintiffs "will not sign any affidavit or release that includes the term 'global' or any other term they do not understand."

The attestations in the record associated with these emails are not signed or notarized; thus, they are not compliant with K.S.A. 2023 Supp. 38-152(a)(4), which requires a completed "affidavit or verified statement." An affidavit is recognized as a written statement made and sworn to under oath or affirmed by a person authorized to administer the oath or affirmation. *Chubb v. Sullivan*, 50 Kan. App. 2d 419, 446-47, 330 P.3d 423 (2014). However, Kansas law provides that a person can satisfy any statutory requirements for affidavits through an "unsworn written declaration, verification, certificate or statement dated and subscribed by the person as true, under penalty of perjury" that includes the signature of the declarant and the date declared. K.S.A. 53-601(a). The unsigned documents exchanged via email between October 17 and 19, 2023, do not comply with the statutory requirement for an affidavit or verified statement. If Plaintiffs provided Defendants with properly executed affidavits at that time, they failed to provide those in the record for this court's review.

According to the record on appeal, December 10, 2023, was the earliest date that Plaintiffs provided Defendants with an affidavit or verified statement complying with the requirements of K.S.A. 2023 Supp. 38-152(a)(4). According to Plaintiffs, on December 10, they "formally executed Affidavits . . . to satisfy the requirements of [K.S.A. 38-152(a)]." Therefore, prior to the proper execution of the affidavits in compliance with K.S.A. 2023 Supp. 38-152(a), the parties could not act in accordance with the September

16

Settlement Document. While the parties had entered into a binding agreement to settle on September 22, 2023—they had not met the requirements to execute that agreement without court approval until December 10. See *Hudgens*, 252 Kan. at 484 (agreement "not a completed settlement" until court approval).

Therefore, the district court did not err in ruling that the September Settlement Document was not enforceable until the parties complied with the provisions of K.S.A. 2023 Supp. 38-152. However, it did err when it found that other conditions delayed the enforceability of the September Settlement Document.

*The Need for a Final Settlement and Release Agreement*

Defendants argue that the September Settlement Document was so infirmed as to require a fully integrated writing evidencing the parties' agreement before it became enforceable. While this court agrees that the September Settlement Document is lacking in the typical indicia of a full settlement and release agreement, the facts do not demonstrate that the parties intended to delay its formation until the completion of a final settlement and release agreement. See, e.g., *Stephenson*, 2011 WL 2112021, at *2-3. That does not mean, however, a final settlement and release agreement was not contemplated.

The district court correctly explained that the September Settlement Document "is not the only requirement to start the time running" for an enforceable agreement to start the clock running on interest under K.S.A. 40-2,126. However, to the extent that the district court ruled that the parties' settlement agreement was not enforceable until they agreed to the terms contained in the sixth version of the Final Settlement and Release Agreement on about April 16, 2024, and showed all medical liens were paid, that was an error. No such requirement existed. However, that error is likely of little consequence, as explained below. The September Settlement Document became fully binding and

17

enforceable after the Plaintiffs complied with K.S.A. 2023 Supp. 38-152(a) on December 10, 2023.

II.     INTEREST UNDER K.S.A. 40-2,126

All the issues in this appeal stem from the Plaintiffs' allegation that Defendants' failure to tender payment of the Settlement Proceeds within 30 days entitles them to interest under K.S.A. 40-2,126. Defendants argue that they are not liable for interest for multiple reasons, including that K.S.A. 40-2,126 does not permit Plaintiffs, as third-party claimants, to seek interest. For the reasons described below, additional factfinding is required.

To prevent unreasonable delays, Kansas law requires that insurers make agreed payments to claimants due under a contract of insurance within 30 days of the agreement between the claimant and the insurer or be subject to a claim for interest. See K.S.A. 40-2,126. Specifically, if an insurer fails to tender payment as required and agreed, the insurer then owes an interest payment of 18% from the date of the agreement between the claimant and the insurer:

> "[E]ach insurance company, fraternal benefit society and any reciprocal or interinsurance exchange licensed to transact the business of insurance in this state which *fails or refuses to pay any amount due under any contract of insurance* within the time prescribed herein shall pay interest on the amount due. *If payment is to be made to the claimant and the same is not paid within 30 calendar days after the amount of the payment is agreed to between the claimant and the insurer, interest at the rate of 18% per annum shall be payable from the date of such agreement*. If payment is to be made to any other person for providing repair or other services to the claimant and the same is not paid within 30 calendar days following the date of completion of such services and receipt of the billing statement, interest at the rate of 18% per annum shall be payable on the amount agreed to between the claimant and the insurer from the date of receipt of the billing statement." (Emphases added.) K.S.A. 40-2,126.

18

Resolution of this issue requires statutory interpretation which presents a question of law over which appellate courts have unlimited review. *Nicholson v. Mercer*, 319 Kan. 712, 714, 559 P.3d 350 (2024). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *John Doe v. M.J.*, 315 Kan. 310, 320, 508 P.3d 368 (2022). An appellate court must first attempt to ascertain legislative intent through the plain statutory language enacted, giving common words their ordinary meanings. *In re Wrongful Conviction of Sims*, 318 Kan. 153, 158, 542 P.3d 1 (2024). This court cannot evaluate legislative history or statutory construction when the statute's language is plain—nor can it speculate about what the law should be. See *Bruce v. Kelly*, 316 Kan. 218, 232, 514 P.3d 1007 (2022) (a court may only turn to legislative history when statutory language is unclear); *Woessner v. Labor Max Staffing*, 312 Kan. 36, 44-45, 471 P.3d 1 (2020) (court cannot determine what law should be but must use the language provided by the Legislature); *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 998-99, 348 P.3d 602 (2015) (appellate court must look to plain language first rather than use legislative history to determine intent—to do so otherwise is to commit error).

> *Plaintiffs Can Be Claimants under K.S.A. 40-2,126*

Defendants contend that the statute only applies to payments from insurers to insureds/policyholders under a contract of insurance. The statute provides that "[i]f payment is to be made to the claimant and the same is not paid within 30 calendar days after the amount of the payment is agreed to between the claimant and the insurer" then 18% interest shall be payable from the date of the agreement. K.S.A. 40-2,126. Nothing in the statute limits its application to insureds/policyholders.

If the Legislature had intended to limit this provision to only permit insureds or policyholders to seek interest, it could have easily done so by referring only to those categories of persons. Instead, the statute uses the broad term "claimant" to identify the

19

category of persons permitted to seek interest from the insurer. See *Fajardo v. Safeco Ins. Co. of America*, No. 11-CV-2376-KGG, 2012 WL 113572, at *3 (D. Kan. 2012) (unpublished opinion) (indicating the term claimant is more encompassing than the term insured). While the term "claimant" is not defined, its meaning in the insurance context is commonly understood to be someone who makes or asserts a claim for damages that may be payable under an insurance contract. Both insureds and non-insured third parties can be claimants.

Consistent with a plain reading of the statute, courts have explicitly and implicitly found that K.S.A. 40-2,126 contemplates interest payments to third-party claimants. See *Hudgens*, 252 Kan. at 483 (implying third-party claimants can pursue interest); *Ansley v. Gilhousen*, No. 68,923, 1993 WL 13966024, at *1 (Kan. App. 1993) (unpublished opinion) (relying on *Hudgens* and finding K.S.A. 40-2,126 applies to third-party claimants); *Fajardo*, 2012 WL 113572, at *3. In *Fajardo*, the federal district court applying Kansas law found that both insureds and those injured by insureds make claims under insurance contracts, making both "claimants" under K.S.A. 40-2,126. As the *Fajardo* court noted, if the Legislature "intended to limit the remedy to insureds it could have easily and clearly done so." 2012 WL 113572, at *3.

Defendants do not address the relevant caselaw that appears to find that an injured third-party can be a "claimant" under K.S.A. 40-2,126. In *Hudgens*, the Kansas Supreme Court implied that the provisions of K.S.A. 40-2,126 required the payment of interest to third-party claimants by noting that the insurer did not comply with K.S.A. 40-2,126 when it failed to pay the settlement to the third-party claimant. 252 Kan. at 483. Defendants refer to *Ansley* for the proposition that the insurer needs to be a defendant to the litigation. But the decision in *Ansley* relies on *Hudgens* to find third-party claimants can seek interest under K.S.A. 40-2,126 and contains no requirement that the insurer be a party but merely refers to demands on the insurer for payment. 1993 WL 13966024, at

20

*1-2. Plaintiffs' status as third-party claimants, rather than insureds or policyholders, does not prohibit them from seeking interest under K.S.A. 40-2,126.

*Defendants' Other Challenges to Interest*

Defendants also contend that the interest payments contemplated under K.S.A. 40-2,126 are inapplicable here because they are only due from an insurance company. Therefore, because Defendants are not an insurer, there is no interest due. Additionally, Defendants argue that the Settlement Proceeds were not due on a "contract of insurance" as required under K.S.A. 40-2,126. Defendants cite no legal authority supporting their conclusion that Plaintiffs cannot assert a claim under K.S.A. 40-2,126. See *In re Adoption of T.M.M.H.*, 307 Kan. at 912 (the failure to provide authority is akin to failing to brief the issue).

In relevant part, the statute provides that "each insurance company . . . licensed to transact the business of insurance in this state which fails or refuses to pay any amount due under any contract of insurance within the time prescribed herein shall pay interest on the amount due." K.S.A. 40-2,126. It then provides for the amount to be paid when no payment is made:

> "If payment is to be made to the claimant and the same is not paid within 30 calendar days after the amount of the payment is agreed to between the claimant and the insurer, interest at the rate of 18% per annum shall be payable from the date of such agreement." K.S.A. 40-2,126.

The statute does not require that the insurance company be a defendant in litigation giving rise to the payment or even a party to the settlement agreement giving rise to the payment.

21

However, as Defendants point out—K.S.A. 40-2,126 does require that the payment be "agreed to between the claimant and the insurer." Enforcement would be simpler had the insurer been a party to the September Settlement Document. But alas, the statute does not require that the insurer be a party to the settlement agreement. The statute merely requires that "[i]f payment is to be made to the claimant" of "any amount due under any contract of insurance" where "the amount of the payment is agreed to between the claimant and the insurer," then that payment must be made within 30 days. K.S.A. 40-2,126. Defendants in personal injury actions, like that here, are often insured for some or all the plaintiff's alleged injuries and thus a settlement agreement could be reached in conjunction with an insurer. In fact, insurers are often included in the mediation or settlement process. Therefore, an insurer and claimant can agree to a payment due to the claimant without the insurer being a party to the litigation.

Despite Defendants' attempts to avoid the applicability of K.S.A. 40-2,126, they never deny that an insurance company is responsible to fund at least part of the Settlement Proceeds. In fact, this court notes that multiple insurers are identified and included in the Final Settlement and Release Agreement. Moreover, Defendants never contend that the insurer did not agree to the Settlement Proceeds in the September Settlement Document. The issues are whether the Settlement Proceeds were "due under any contract of insurance" and whether the settlement amount was "agreed to between the claimant and the insurer." K.S.A. 40-2,126. These are questions for the factfinder.

Defendants next point to the definition of "[c]ontract of insurance" found at K.S.A. 40-5202(d) for the contention that K.S.A. 40-2,126 limits recovery for interest of late payments made through a "contract of insurance." According to Defendants, because the payment was due Plaintiffs pursuant to the September Settlement Document (or the Final Settlement and Release Agreement), K.S.A. 40-2,126 does not apply. Even assuming the definition for "contract of insurance" that Defendants rely on from the Assumption

22

Reinsurance Agreement Act in K.S.A. 40-5202 applies here, it does not prohibit Plaintiffs from seeking interest under K.S.A. 40-2,126.

While a "contract of insurance" might be a "written agreement between an insurer and policyholder," the interest owed for late payments under K.S.A. 40-2,126 is not limited to amounts owed the insured or policyholder under that contract of insurance. K.S.A. 40-2,126 plainly applies to the "amount due under any contract of insurance," which, if not limited to claims from insureds/policyholders, naturally means any amount the insurance company could owe related to a third party's claim of injury or damage. The Legislature did not limit recovery under K.S.A. 40-2,126 to policyholders, but made it broadly apply to any "claimant," making it clear that the parties to the contract of insurance were not the only persons who could seek interest in this manner. The Legislature could have limited recovery under K.S.A. 40-2,126 to insureds or policyholders, but it did not.

When a statute's language is plain and unambiguous, this court will not speculate about what the Legislature intended or "read into the statute something that is not readily found in it." *Hays v. Ruther*, 298 Kan. 402, 405, 313 P.3d 782 (2013). The Legislature knows how to "express[] its intent through the language of the statutory scheme" and appellate courts presume as much when analyzing statutory language. 298 Kan. at 404-05. This court's reading of a statute begins with its plain language, giving common words their ordinary meaning. *Bruce v. Kelly*, 316 Kan. at 224.

To summarize, Plaintiffs are permitted to pursue interest as claimants under K.S.A. 40-2,126 for payments and "due under any contract of insurance" and "agreed to between the claimant and the insurer." K.S.A. 40-2,126.

Defendants contend that even if Plaintiffs are permitted to seek interest under K.S.A. 40-2,126, they are not entitled to such due to their own actions. First Defendants argue that they made good faith attempts to tender payment as of December 7, 2023, that Plaintiffs wrongly refused. Second, Defendants argue that the delayed payment, even if calculated from 30 days after December 10, was due to Plaintiffs' own actions. Because the district court determined that the September Settlement Document was not enforceable until April 2024, rather than December 10, 2023, these issues related to Plaintiffs' entitlement to interest under K.S.A. 40-2,126 were not addressed by the district court. Thus, this matter must be remanded for further proceedings.

On remand, the district court must determine whether Plaintiffs can meet the requirements of K.S.A. 40-2,126 to show that they are a claimant entitled to payment under a contract of insurance that was agreed to between Plaintiffs and the insurer. If the district court determines that Plaintiffs satisfy all the elements of K.S.A. 40-2,126, it must then determine whether Plaintiffs are entitled to recovery from Defendants' failure to pay as of 30 days from December 10, 2023 (the date the September Settlement Document became enforceable) based on the facts of this case including Defendants' attempts to pay or such other reasons. See *Carpenter v. Riley*, 234 Kan. 758, 761, 675 P.2d 900 (1984) (defining tender as an unconditional offer to perform a condition by a party with the ability to perform); see also *Farmers Ins. Co. v. Miller*, No. 116,605, 2018 WL 1124131, at *4-6 (Kan. App. 2018) (unpublished opinion) (declining to address interest due but noting the district court considered the dilatory and delaying conduct of both parties); *Peter Smith Am. Legion Home Ass'n v. Allied Mut. Ins. Co.*, No. 69,549, 1994 WL 17120273, at *2 (Kan. App. 1994) (unpublished opinion) (upholding an award of interest under K.S.A. 40-2,126 from the date of loss as supported by "a pattern of unreasonable and vexatious delay of payment"); *Mitchelson v. Travelers Ins. Co.*, 229 Kan. 567, 572-73, 629 P.2d 143 (1981) (discussing interest from late payment on insurance contract in interpleader actions); *Newflower Market, Inc. v. Cook*, 229 P.3d 1058, 1062-63 (Colo. App. 2010) (applying interpleader interest principles to contractual interest). In

24

determining whether interest is due under K.S.A. 40-2,126, it is appropriate for the district court to consider the reasons for the delayed payment.

III.    PLAINTIFFS ARE NOT ENTITLED TO ATTORNEY FEES

Plaintiffs filed two motions seeking attorney fees. Their amended motion to enforce requested attorney fees based on the district court's inherent authority to impose sanctions. In their motion for declaratory judgment, Plaintiffs also included a request for attorney fees under K.S.A. 60-2002, K.S.A. 40-256, and K.S.A. 40-908 for prosecuting their motion seeking interest under K.S.A. 40-2,126. When ruling on the issue of attorney fees, the district court judge said:

> "Now finally, with regard to attorney fees, as a general proposition, attorney fees are one of two things. It's either due under a statute, and there's nothing in . . . [K.S.A.] 40-2,126 that interest is due, or as a general proposition when you have a case that is open, then you look at [K.S.A.] 60-211, bad faith delay."

The district court found that following mediation, neither party violated K.S.A. 60-211. The district court admitted on the record that delays had occurred, but it declined to rule "who was more to blame for the delay because it's unnecessary." In denying the request for fees, the judge then said:

> "[T]here's no indication in anything that I've read that the defendants were operating in bad faith, or in any of the other reasons that are listed in Rule 11. You know, given that both sides there have been issues in this case where I wanted to have a hearing earlier than later and, for whatever reason, someone's schedule didn't work out. And up until my filing said we need to get this done, I believe I've been more lenient than less lenient in accommodating everybody's schedules."

25

Plaintiffs argue the district court erred in denying them an award of attorney fees. The issue of the district court's authority to award attorney fees is a question of law over which appellate review is unlimited. *In re Estate of Oroke*, 310 Kan. 305, 317, 445 P.3d 742 (2019). A court may not award attorney fees absent statutory authority or an agreement by the parties. *In re Marriage of Williams*, 307 Kan. 960, 982, 417 P.3d 1033 (2018).

*Request based on court's inherent authority*

Under K.S.A. 60-211(b), (c), a court may impose a sanction, which may include attorney fees, against a party upon a finding that the party presented a pleading, written motion, or other paper that is frivolous or improper, meant to harass or cause delay, or is otherwise not supported by the evidence. Further, the Kansas Supreme Court has ruled courts have "inherent power to sanction behavior, not denominated contempt and absent particular statutory authorization, because sanction is 'reasonably necessary for the administration of justice, provided these powers in no way contravene or are inconsistent with substantive statutory law.'" *Comprehensive Health of Planned Parenthood v. Kline*, 287 Kan. 372, 419-20, 197 P.3d 370 (2008).

In their amended motion to enforce, Plaintiffs argued they were entitled to an award of attorney fees based on the court's inherent authority. The district court agreed it had such authority but denied Plaintiffs' request for attorney fees at its hearing on May 1, 2024, and issued a supplemental order explaining its decision on May 3. The district court did not find Defendants acted in bad faith or otherwise intentionally delayed the proceedings. Substantial evidence supports the district court's decision. The record shows the parties attempted to negotiate in good faith and disagreed about application of the law. Therefore, the district court did not err in denying attorney fees based on its inherent authority or authority provided by K.S.A. 60-211.

26

*Request based on K.S.A. 60-2002, K.S.A. 40-256, and K.S.A. 40-908*

In their motion for declaratory judgment, Plaintiffs argued they were entitled to an award of attorney fees based on K.S.A. 60-2002, K.S.A. 40-256, and K.S.A. 40-908. The district court denied Plaintiffs' request for attorney fees at its hearing on May 1, 2024, and issued a supplemental order explaining its decision on May 3. However, the court did not appear to rule on the issue based on application of the listed statutes. Plaintiffs do not address these statutes in their brief before this court. As such, this court need not address application of these statutes. See *Hodes & Nauser v. Stanek*, 318 Kan. 995, 1002, 551 P.3d 62 (2024) (indicating that normally the court would find abandoned a claim not raised in briefing or by the parties). Even so, these statutes do not support Plaintiffs' claim for attorney fees.

The first statute, K.S.A. 60-2002, provides that "the costs shall be allowed to the party in whose favor judgment is rendered." K.S.A. 60-2003 defines items allowable as costs. These two statutes do not provide authority for an award of attorney fees. *Richardson v. Murray*, 54 Kan. App. 2d 571, 576, 402 P.3d 588 (2017) ("Attorney fees generally are not included in the costs of an action.") (citing *Legislative Coordinating Council v. Stanley*, 264 Kan. 690, 703, 957 P.2d 379 [1998]). Instead, attorney fees can be recoverable as costs "if the relevant statute or other authority defines costs to include attorney fees." *Richardson*, 54 Kan. App. 2d at 576-77.

The second statute, K.S.A. 40-256, allows for attorney fees "in all actions . . . in which judgment is rendered against any insurance company" or similar entity. In this matter, there was no judgment against an insurance company or similar entity. Thus, K.S.A. 40-256 does not provide a statutory basis for attorney fees in this case. The third and last statute, K.S.A. 40-908, provides for an award of attorney fees in an action "in which judgment is rendered against any insurance company on any policy given to insure

any property in this state against loss by fire, tornado, lightning or hail." This statute does not provide authority for attorney fees in this matter.

None of the statutes provide authority for the district court to award attorney fees, and Plaintiffs have not pointed to any other statute applicable to their situation. K.S.A. 40-2,126 makes no reference to attorney fees. Therefore, the district court did not err in declining to award attorney fees.

IV. DEFENDANTS FAILED TO SHOW PLAINTIFFS' NOTICE OF APPEAL WAS UNTIMELY

At the end of their brief, Defendants argue this matter was final as of the district court's rulings issued on May 3, 2024, meaning Plaintiffs' notice of appeal filed after the 30-day deadline—which was June 2—was untimely. This case presents unique circumstances. The district court issued rulings nominally addressing the remaining issues of interest and fees on May 3. However, that ruling did not include a formal dismissal. Then the district court held a hearing on Plaintiffs' objection concerning interest and fees after that date and formally dismissed the case later, on June 25. Based on these facts, this court cannot say Plaintiffs' appeal was untimely.

CONCLUSION

The parties' settlement agreement was not binding and enforceable until December 10, 2023, when the provisions of K.S.A. 2023 Supp. 38-152(a)(4) related to the settlement and release of the minors' claims were met. Plaintiffs, as third-party claimants, are permitted to pursue interest for late payment of the Settlement Proceeds pursuant to K.S.A. 40-2,126 if Plaintiffs can demonstrate they meet all the statutory requirements. The district court's denial of interest based on its conclusion that the settlement agreement was not enforceable until April 2024 is reversed and remanded. On remand, the district court must first determine whether Plaintiffs satisfy the provisions of K.S.A. 40-2,126,

28

making them claimants under a contract of insurance in which the insurer and claimants agreed to a settlement payment, and then whether Plaintiffs are entitled to interest because the payment was not made within 30 days of December 10, 2023, and considering the facts here.

Affirmed in part, reversed in part, and remanded with directions.

* * *

SCHROEDER, J., concurring in part and dissenting in part: For the reasons explained below, I respectfully concur in part and dissent in part from the majority opinion.

I concur with the majority in that the September Settlement Document formed a binding agreement that became enforceable once appellants complied with K.S.A. 2023 Supp. 38-152. I dissent with respect to the majority's finding this matter must be remanded to the district court for final resolution. I do not agree the district court must determine whether the settlement payment was due under a contract of insurance and agreed to by the insurer under K.S.A. 40-2,126.

The parties do not dispute that the individuals who signed the September Settlement Document had authority to do so. The September Settlement Document provided the essential terms of the settlement, including the settlement amount and the parties involved. In fact, the appellees do not deny an insurance company is responsible to fund at least part of the Settlement Proceeds, and multiple insurers are identified and included in the Final Settlement and Release Agreement. It goes to reason the insurer was aware of the circumstances involving this case.

29

The district court sufficiently addressed the issue of interest in its finding that the settlement payment was not due until the parties signed on the dotted line. Appellants largely contributed to any delay in reaching a finalized and signed agreement by failing to accept appellees' multiple attempts to tender payment and failing to appear at a hearing involving the issue of interest. While the settlement agreement became binding and enforceable in December 2023, appellants continued to delay the case and reject appellees' attempts to tender payment for several months. While the issue may not necessarily fall under that of invited error, appellants cannot receive a windfall of 18 percent interest on the agreed settlement amount by choosing not to accept appellees' settlement payment. Such actions would create incentive and create an inappropriate standard for claimants to refuse payment and cash-in on an extra 18 percent interest on their settlement amount until accepted. Accordingly, I would affirm the district court's denial of appellant's motion for interest.

Thus, I concur in part and dissent in part.